**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS**

| |
|---|
| TWIN CITY FIRE INSURANCE CO., <br><br> Plaintiff, <br><br> v. <br><br> OCEANEERING INTERNATIONAL, INC., JOHN R. HUFF, T. JAY COLLINS, JEROLD J. DESROCHE, D. MICHAEL HUGHES, HARRIS J. PAPPAS, PAUL B. MURPHY, JR., DAVID S. HOOKER, and M. KEVIN MCEVOY, <br><br> Defendants. |

C. A. No.4:16-cv-666

## <u>ORIGINAL COMPLAINT FOR DECLARATORY RELIEF</u>

Plaintiff Twin City Fire Insurance Company ("Twin City") files its Original Complaint. Twin City respectfully requests this Honorable Court issue a declaratory judgment under Federal Rule of Civil Procedure 57 as well as 28 U.S.C. §§ 2201-2202 that Twin City does not owe indemnity coverage under an insurance policy issued by Twin City to Oceaneering International Inc. ("Oceaneering") or the other defendants, who are collectively referred to herein as the "Individual Defendants," with respect to an underlying derivative lawsuit filed against Oceaneering and the Individual Defendants in Delaware.

### NATURE OF THE ACTION

1.         This matter involves insurance coverage for an underlying dispute, which had its origins in 2010.  At that point in time, Oceaneering adopted a compensation plan for its directors and thereunder allegedly began paying/granting compensation as well as other awards to its directors far in excess of compensation packages given to directors of comparable

1

companies (the "Payments").

2.	One of Oceaneering's shareholders, Peter L. Jacobs, sued in the Delaware Chancery Court, derivatively on behalf of Oceaneering, in a case styled *Peter L. Jacobs, derivatively on behalf of Oceaneering International, Inc. v. Huff, et al.*, C.A. No. 9774 (Del. Ch.), asserting that certain directors were vastly overcompensated (the "Chancery Action"). Jacobs sought disgorgement and restitution of the Payments from those directors.

3.	Twin City issued "D&O Premier Defense Policy" number 00 DA 0100989-13 ("the Policy" or "the Twin City Policy") to Oceaneering with a $10 million Limit of Liability (subject to a $0/ $500,000/ $1 million self-insured retention depending on the insuring agreement) for the Policy Period of August 1, 2013 to August 1, 2014 (the "Policy Period").

4.	The defendants in the Chancery Action tendered the Chancery Action as a Claim under the Policy. According to public filings, there are negotiations for settlement of the Chancery Action presently ongoing. As a result of that Claim, as well as the settlement negotiations, there now exists an actual case or controversy as to the extent and availability of insurance coverage for a possible settlement.

5.	Twin City has been advancing defense costs and expenses, pursuant to the Policy, under a full reservation of all rights. However, Twin City believes that under the applicable law any settlement of the Chancery Action with payments in the nature of disgorgement is uninsurable and otherwise does not and cannot constitute "**Damages**"[1] or "**Loss**" under the Policy, its terms, conditions and definitions. That critical and central issue is ripe for adjudication by this Honorable Court. Accordingly, Twin City brings this declaratory judgment action, pursuant to 28 U.S.C. § 2201, seeking a declaration of its rights and other legal relations with respect to insurance coverage for settlement payments regarding the Chancery Action.

---

[1] Terms that are bolded herein are defined in the Policy.

## THE PARTIES, JURISDICTION AND VENUE

6.        Plaintiff Twin City is an Indiana corporation, with its principal place of business located in Hartford, Connecticut.

7.        Defendant Oceaneering is a Delaware corporation with its principal place of business in Houston, Texas, specifically at 11911 F.M. 529 Houston, Texas 77041-3011.  It may be served through its registered agent for service of process, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

8.        Defendant John R. Huff is, on information and belief, a citizen and resident of the State of Texas.  He may be served with process at his home address of 102 Broad Oaks Circle, Houston, Texas 77056-1200.

9.        Defendant T. Jay Collins is, on information and belief, a citizen and resident of North Carolina who does business in Texas, with a home address of 420 40th Street, Sunset Beach, North Carolina 28468-4130.  He may be served with process through the Texas Secretary of State under Texas Civil Practice & Remedies Code § 17.044 and § 17.045.

10.        Defendant Jerold J. DesRoche is, on information and belief, a citizen and resident of the State of California who does business in Texas.  His home address is 659 Dunhill Drive, Danville, California 94506-1354.  He may be served with process through the Texas Secretary of State under Texas Civil Practice & Remedies Code § 17.044 and § 17.045.

11.        Defendant D. Michael Hughes is, on information and belief, a citizen and resident of the State of Texas.  He may be served with process at his home address of 3296 Junction Highway, Ingram, Texas 78025-3293.

12.        Defendant Harris J. Pappas is, on information and belief, a citizen and resident of the State of Texas. He may be served with process at his home address of 243 Hedwig Road, Houston, Texas 77024-6735.

13.        Defendant Paul B. Murphy, Jr. is, on information and belief, a citizen and resident of the State of Texas.  He may be served with process at his home address of 5952 Pine Forest Road, Houston, Texas 77057-1430.

14.        Defendant David S. Hooker is, on information and belief, a citizen and resident of the United Kingdom who does business in Texas.  His known address is David S. Hooker, c/o Houlder Limited, 22 Cousin Lane, London EC4R 3TE United Kingdom.  He may be served with process through the Texas Secretary of State under Texas Civil Practice & Remedies Code § 17.044 and § 17.045.

15.        Defendant M. Kevin McEvoy is, on information and belief, a citizen and resident of the State of Texas.   He may be served with process at his home address of 3121 Midlane Street, Houston, Texas 77027-5615.

16.        None of the Individual Defendants are, on information and belief, citizens or residents of either Connecticut or Indiana.

17.        Based upon the facts alleged in the Chancery Action, specifically the amounts alleged by Jacobs that the Individual Defendants over-paid themselves, the amount in controversy exceeds seventy-five thousand dollars, exclusive of interest and costs.  Twin City is neither incorporated, nor has its principal place of business, in any state where Oceaneering or any of the Individual Defendants are citizens.  Diversity jurisdiction over the subject matter of this suit thus exists under 28 U.S.C. § 1332.

18.        *In personam* jurisdiction over Oceaneering exists under Texas law because Oceaneering does business in the State of Texas, specifically in the Southern District of Texas, and the Policy was purchased and delivered in Texas, specifically in the Southern District of Texas.

19.        *In personam* jurisdiction exists under Texas Civil Practice & Remedies Code § 17.044 over each of the Individual Defendants because each Individual Defendant conducted business in the State of Texas as a director of Oceaneering.  Moreover, each of the Individual Defendants sought coverage under the Policy issued in Texas to Oceaneering for coverage related to the Chancery Action.  Additionally, the 2010, 2011, 2012, 2014, and 2015 board meetings for Oceaneering occurred in Houston, Texas within the Southern District of Texas.  Upon information and belief, the Individual Defendants participated in these meetings, thereby conducting business in Texas.

20.        Venue is proper under 28 U.S.C. § 1391.  A substantial part of the events or omissions giving rise to the claim occurred in this judicial district.  Oceaneering has its principal place of business in Houston, Texas and the claim for relief arises out of an insurance policy purchased and delivered in Houston, Texas.

FACTUAL ALLEGATIONS

A.    The Chancery Action

21.        On June 17, 2014, Twin City received notice of the Chancery Action from Oceaneering.  The Chancery Action alleges breaches of fiduciary duties and unjust enrichment in connection with the Payments.    All of the Individual Defendants served as directors of Oceaneering.  Save for Hooker and DesRoche, they all continue to serve as directors.  Hooker retired from the board in 2013 and DesRoche retired from the board in 2015.  A true and correct

copy of the Chancery Action Complaint (the "Chancery Complaint") is attached hereto as Exhibit A.

22.      The Chancery Complaint alleges that McEvoy (Oceaneering's President and CEO) is the only Individual Defendant who is an employee of Oceaneering.  The other seven Individual Defendants are referred to herein as the "Non-Employee Directors."  The Chancery Complaint alleges that, between 2011 and 2014, the Non-Employee Directors granted themselves compensation in amounts that were unfair to Oceaneering and grossly excessive. McEvoy, who is the only employee director named, is alleged to have approved "compensation payments to the other Defendants in amounts that were excessive and unfair to the Company."

23.      The Chancery Complaint alleges that the Non-Employee Directors' compensation from Oceaneering over this four-year period vastly exceeded, by millions of dollars, the compensation that Oceaneering's peer companies paid to their non-employee directors.  The first Count of the Chancery Complaint alleges that the Individual Defendants thereby violated their fiduciary duties to Oceaneering.  The second Count of the Chancery Complaint alleges that the Non-Employee Directors were unjustly enriched as a result of the compensation that they received from Oceaneering between 2011 and 2014.

24.      As a remedy, the Chancery Complaint clearly and expressly seeks to require the Non-Employee Directors to disgorge as restitution the excessive compensation that they allegedly received.  Specifically, the Chancery Action sought the following relief:

> 80.   Accordingly, this Court should order Collins, DesRoche, Hooker, Huff, Hughes, Pappas, and Murphy to disgorge the proceeds obtained as a result of the excessive and unfair transactions described above.

B.    The Insurance Policy and Coverage Analysis

25.        The Policy was delivered to Oceaneering in Texas and Texas law applies to the interpretation of the Policy.  A true and correct copy of the Twin City Policy is attached as Exhibit B.

26.        The Policy is written on a "claims made" basis, which means that it only covers Claims first made during the applicable Policy Period of August 1, 2013 to August 1, 2014 and timely noticed to the Insurers.  Oceaneering is the insured and is defined as the "**Entity**" in the Policy.

27.        The Policy contains Insuring Agreements designated I.(A) through (D). Insuring Agreements I.(A-C) (as amended by Endorsement 10) provide in relevant part:

**(A)    NON-INDEMNIFIABLE DIRECTORS' AND OFFICERS' LIABILITY**

(1)    Except for **Loss** which the Insurer pays pursuant to Insuring Agreement (B) of this Policy, the Insurer will pay **Loss** on behalf of the **Insured Persons** which the **Insured Persons** have become legally obligated to pay as a result of a **Claim** first made during the **Policy Period** or Extended Reporting Period, if applicable, against the **Insured Persons** for a **Wrongful Act** which takes place during or prior to the **Policy Period**.

**(B)    INDEMNIFIABLE DIRECTORS' AND OFFICERS' LIABILITY**

(1)    The Insurer will pay **Loss** on behalf of the **Entity** for which the **Entity** has, to the extent permitted or required, indemnified the **Insured Persons**, and which the **Insured Persons** have become legally obligated to pay as a result of a **Claim** first made during the **Policy Period** or Extended Reporting Period, if applicable, against the **Insured Persons** for a **Wrongful Act** which takes place during or prior to the **Policy Period**.

**(C)    ENTITY SECURITIES CLAIM LIABILITY**

The Insurer will pay **Loss** on behalf of the **Entity** which the **Entity** has become legally obligated to pay as a result of a **Securities Claim** first made during the **Policy Period** or Extended Reporting Period, if applicable, against the **Entity** for a **Wrongful Act** which takes place during or prior to the **Policy Period**.

28.        Insuring Agreement C applies only to the corporation's own liability. Because Oceaneering is only a nominal defendant in the Chancery Action, Insuring Agreement C has little relevance except as to minor administrative/defense costs related to Oceaneering's involvement in the suit.

29.        Under applicable law, Oceaneering can (and has agreed to) indemnify its directors for the costs of defending the Chancery Action.  Thus, to the extent that coverage otherwise exists under the Policy, the costs of defending the Individual Defendants in the Chancery Action would fall under Insuring Agreement B, and such coverage would be subject to a $1 million self-insured retention.

30.        On the other hand, under applicable law, Oceaneering is not permitted to indemnify its directors for amounts paid in settlement of a derivative claim as the settlement payments would be owed to the corporation.  Because of the bar on such corporate indemnification, Insuring Agreement B cannot come into play as to any settlement.

31.        Thus, coverage for settlement of the derivative claims against the Individual Defendants for receipt of the Payments, if there is any coverage, would be under Insuring Agreement A.

32.        Each of the Individual Defendants herein is a named defendant in the Chancery Action and is an **Insured Person** under the Policy.  It also appears that the **Claim** was first made during the Policy Period.  Thus, under Insuring Agreement A, quoted above, there is coverage for the Chancery Action if it alleges "**Loss**" as defined by the Policy, which the **Insured Persons** are legally liable to pay as a result of a **Claim** for a **Wrongful Act**, unless some other exclusion, condition or limitation applies.

33.        A **Wrongful Act** is defined at Section II.(HH) of the Policy.  It provides:

**(HH)"Wrongful Act"** means:

    **(1)**  any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty, committed or attempted by an **Insured Person,** in his or her capacity as such, or in an **Outside Capacity**, or, with respect to Insuring Agreement (C), an **Entity**; or

    **(2)**  any matter claimed against an **Insured Person** solely by reason of their serving in such capacity or in an **Outside Capacity**.

34.     The Chancery Complaint contains two "Counts."   One of those Counts asserts:

> 73.     Defendants Collins, DesRoche, Hooker, Huff, Hughes, Pappas, and Murphy breached their fiduciary duties of loyalty by granting themselves and accepting compensation in amounts that were excessive and unfair to the Company.

35.     To the extent that the Non-Employee Directors are alleged to have "accepted" compensation, that acceptance would have been in their personal capacity.  However, to the extent that the Chancery Complaint alleges that they improperly approved the Payments, that may be viewed as the allegation of a "**Wrongful Act**."

36.     The second Count is for unjust enrichment which requires/alleges no wrongdoing and, thus, does not appear to allege any **Wrongful Act**.

37.     However, even assuming that Count One sufficiently alleges the existence of a **Wrongful Act**, there is no coverage unless there is resulting **Loss**.

38.     **Loss** is defined at Section II.(U) (as amended by Endorsement 10) of the Twin City Policy.  It provides in relevant part:

> **(U)  "Loss"** means **Damages, Defense Costs** and **Investigation Costs.**

39.     **Damages** is defined in relevant part at Section II.(C) of the Twin City Policy (as amended by Endorsement 10), as follows:

> (C)  "**Damages**" means amounts, other than **Defense Costs, Pre-Claim Inquiry Costs** or **Release Costs**, which the **Insured Persons** or, with respect to Insuring Agreement (C), the **Entity**, are legally obligated to pay as a result of any **Claim** insured by this Policy, including:
>
> (1)   settlements, judgments, and costs, awarded pursuant to judgments, and appeals;

40.     However, the definition of **Damages** goes on to provide that:

**"Damages"** shall not include:

(i)    taxes, fines or penalties other than, where permissible by law and otherwise covered under this Policy:

(ii)    non-monetary relief;

(iv)    amounts for matters uninsurable pursuant to applicable law; and

41.        The law is clear that insurance cannot cover an insured's obligation to return money or property.  Whether viewed as a matter of public policy, the interpretive principle that the word "loss" requires actually losing something or an extension of the settled law of unjust enrichment, an insured suffers no insurable injury when it returns money regardless of how that money was acquired.

42.        Payments in the nature of disgorgement are uninsurable under applicable law.

43.        Because the Payments complained of in the Chancery Action were made to the **Insured Persons,** any settlement resulting in the return of some or all of the Payments by those Insured Persons is uninsurable and therefore does not constitute **Damages** under the Policy.  In turn, the settlement of those claims cannot and does not result in any **Loss** under Insuring Agreement A.

44.        Both the language and intent of the Policy was that it should not cover settlement payments in the nature of disgorgement made as the result of claims for restitution and disgorgement.  Subpart "iv" of the **Damages** definition excludes from the definition of **Damages** disgorgement because such payments would be uninsurable.

45.        Because uninsurability is a matter of law, even if the Policy did not contain that provision, disgorgement would still be uninsured.

46.          The reason there is a present dispute is because the defendants believe that Twin City is and must rely upon policy exclusions contained in Section V.(D) of the Twin City Policy (as amended by Endorsement 10).

47.          If there are no **Damages** under the **Damages** definition, Section V.(D) is never applicable.   In any event, Section V.(D) cannot make something that is uninsurable, insurable.  At bottom, Section V.(D) is simply irrelevant to the coverage analysis.

C.          The Nature of the Coverage Dispute

48.          Oceaneering noticed the Chancery Complaint to Twin City on June 17, 2014.  Twin City acknowledged receipt of the Claim on June 23, 2014 and issued an initial reservation of rights letter dated October 6, 2014.

49.          Thereafter, various coverage position letters and emails issued by Twin City detailed numerous potential coverage issues under the Policy and reserved all of Twin City's rights, remedies and defenses.

50.          Under a clear reservation of rights, Twin City agreed to and did advance reasonable and necessary **Defense Costs** on behalf of Oceaneering and the Individual Defendants to the extent they exceeded the applicable retentions.

51.          Oceaneering, on behalf of the Individual Defendants, has asked that Twin City commit to paying any settlement of the Chancery Action.  Twin City has consistently made clear that any settlement would not be covered.  Nevertheless, the parties to the Chancery Action are negotiating a settlement that, as reported to Twin City, involves the return of some or all of the amounts that had been paid to the Non-Employee Directors.   These negotiations are advanced.

11

52.     The defendants have asserted in communications with Twin City that Twin City must make a substantial contribution to those returned amounts. Twin City has, in response, reiterated its position that payments in the nature of disgorgement are not covered by the Policy. There is no question that the nature of the claims asserted and the nature of the relief sought in the Chancery Action establishes that any settlement payment will be in the nature of disgorgement or restitution of the allegedly excessive salary and associated payments.[2]

53.     In its responses, Twin City has also asserted that Payments in the nature of disgorgement are uninsurable under applicable law.

54.     Moreover, in its responses, Twin City has further asserted that the only proper purpose and function of liability insurance is to avoid loss, not to result in gain. To allow insurance coverage for such payments would result in a gain to the insured.

55.     Twin City also asserted that allowing liability insurance coverage for disgorgement payments in general, and settlement amounts for the Chancery Action in specific, would also create an unjust enrichment.

56.     Oceaneering has made clear it disagrees with Twin City's position. By virtue of the foregoing, a present justiciable case or controversy exists between Twin City, on the one hand, and Oceaneering and the Individual Defendants on the other hand. Pursuant to 28 U.S.C. § 2201, it is just, fair and equitable that the Court declare the rights and other legal relationships of the parties with respect to the Policy.

---

[2] McEvoy is not a Non-Employee Director and is not alleged in the Chancery Action to have received any Payments. It is not Twin City's understanding that any amount of the potential settlement is attributed to McEvoy. However, even if, in an attempt to bolster its tenuous arguments regarding coverage, some amount is ultimately attributed to McEvoy, that would be a transparent and bad faith manipulation of the settlement, and cannot create coverage. In addition, to the extent that part of any settlement payment in the Chancery Action is attributed to McEvoy, the Policy would at the very least require allocation between covered and uncovered portions of **Loss** based on actual liability for receipt of the allegedly excessive payments.

57.        Twin City is without an adequate remedy at law.[3]

## CLAIM I

### (Declaratory Judgment – No Coverage for the Settlement Payment)

58.        Twin City re-alleges and incorporates by reference the allegations above as if fully set forth herein.

59.        Twin City seeks Declaratory Relief from this Honorable Court under 28 U.S.C. §§ 2201-2202 and Federal Rule of Civil Procedure 57.   Specifically, Twin City respectfully requests this Honorable Court enter the following declaration:

(a)        Disgorgement and/or restitution damages are uninsurable as a matter of law, and thus are not covered by the Twin City Policy;

(b)        Even if they are not uninsurable, under applicable interpretive principles, payments in the nature of disgorgement and/or restitution are not covered under the terms of the Twin City Policy;

(c)        The Chancery Action seeks disgorgement or restitution from the Individual Defendants;

(d)        Any settlement or resolution of the Chancery Action by the Individual Defendants involves disgorgement and/or restitution; and

(e)        Thus, there is no duty or requirement under the Policy or the applicable law for Twin City to indemnify Oceaneering and/or the Individual Defendants with respect to any settlement of the Chancery Action.

---

[3] In the event that a settlement is reached, a judgment is entered, or some other change in circumstances occurs, one or more other substantial coverage defenses under the Policy may become available to Twin City.  Twin City reserves the right to amend this complaint to assert such other coverage defenses, all of which are reserved and not waived.

60.     Twin City respectfully requests this Honorable Court award it attorneys' fees, costs of court, and other expenses as allowed by law or in equity.

### PRAYER & CONCLUSION

**WHEREFORE**, Twin City respectfully requests that this Honorable Court:

A.     Declare that there is no coverage under the Policy for any settlement payments made in the Chancery Action;

B.     In the alternative, to the extent that the Court finds that the defendants are entitled to coverage for some part of the Payments, declare that the Settlement Payments be allocated as between covered and uncovered portions of **Loss**;

C.     Grant such other and further relief as the Court deems just and proper as well as grant Twin City its attorneys' fees and costs.

Respectfully submitted,

*/s/ F. Daniel Knight*
F. Daniel Knight
State Bar No.: 24041265
S.D. Tex. Bar No.: 37344
**Attorney-in-Charge**
CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY
Two Allen Center
1200 Smith Street, Suite 1400
Houston, Texas 77002
Telephone:     (713) 658-2571
Facsimile:     (713) 658-2553
daniel.knight@chamberlainlaw.com

OF COUNSEL:
CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY
Christine Kirchner
State Bar No.:
S.D. Tex. Bar No.:
Telephone:     (713) 654-9691

14

Facsimile:      (713) 658-2553
christine.kirchner@chamberlainlaw.com

-and-

SKARZYNSKI BLACK LLC
James Sandnes
Southern District of New York Bar No.: JS-1199
jsandnes@skarzynski.com
One Battery Park Plaza, 32nd Floor
New York, New York 10004
Telephone:  (212) 820-7700
Facsimile:  (212) 820-7740
*ADMISSION PRO HAC VICE WILL BE REQUESTED*

4828-4451-9470, v. 13