IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TWIN CITY FIRE INSURANCE CO. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| OCEANEERING INTERNATIONAL, | § | C.A. No. 4:16-cv-666 |
| INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
AND SUPPORTING MEMORANDUM**

Defendants Oceaneering International, Inc. ("Oceaneering"), John R. Huff, T. Jay Collins, Jerold J. DesRoche, D. Michael Hughes, Harris J. Pappas, Paul B. Murphy, Jr., David S. Hooker and M. Kevin McEvoy (collectively, the "Oceaneering Directors") (together with Oceaneering, the "Oceaneering Defendants"), move for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c).

Respectfully submitted,

**REED SMITH LLP**

*/s/ J. James Cooper*
J. James Cooper
T.X. I.D. No. 04780010
REED SMITH LLP
811 Main Street, Suite 1700
Houston, Texas 77002
Telephone: 713.469.3800
Facsimile: 713.469.3899
jcooper@reedsmith.com

*Lead Attorney for Defendants Oceaneering International, Inc., John R. Huff, T. Jay Collins, Jerold J. Desroche, D. Michael Hughes, Harris J. Pappas, Paul B. Murphy, Jr., David S. Hooker, and M. Kevin McEvoy*

OF COUNSEL:

**REED SMITH LLP**
Caitlin R. Garber (*pro hac vice* granted)
Pa. I.D. No. 311321
cgarber@reedsmith.com
Kateri Tremblay (*pro hac vice* granted)
Pa. I.D. No. 320466
ktremblay@reedsmith.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of June, 2016, a true and correct copy of the above Defendants' Motion for Judgment on the Pleadings and Supporting Memorandum has been served on all counsel of record via the CM/ECF system.

*/s/ J. James Cooper*
J. James Cooper

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................1

II.     LEGAL ISSUE PRESENTED.............................................................................2

III.    BACKGROUND ..................................................................................................3

        A.      The Twin City Policy............................................................................3

        B.      Oceaneering's Board Of Directors.......................................................4

        C.      The Derivative Action...........................................................................5

        D.      Oceaneering Seeks To Settle The Derivative Action But Twin City
                Refuses To Contribute To Any Settlement............................................6

IV.     LEGAL STANDARD ..........................................................................................7

V.      ARGUMENT .......................................................................................................8

        A.      Twin City Bears the Burden of Proving That Any Express or Implied
                Exclusion Negates The Oceaneering Defendants' Entitlement to Coverage...........8

        B.      Twin City's "Uninsurability" Argument Cannot Be Reconciled With The
                Final Adjudication Requirement In The Policy's Personal Profit Exclusion ..........9

        C.      Twin City's Interpretation Of The Policy Violates Well-Established
                Canons Of Construction........................................................................12

        D.      Texas Public Policy Does Not Prohibit Insurance Coverage For The
                Settlement Of The Derivative Action ..................................................15

                1.      No Texas Court Has Found Public Policy Precludes Coverage For
                        The Settlement Of A Claim Seeking Disgorgement................................16

                2.      *TransTexas*, *Nortex* And *O'Quinn* Do Not Support Twin City's
                        Position That The Settlement Of The Derivative Action Is
                        Uninsurable ................................................................................19

VI.     CONCLUSION...................................................................................................23

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alexander Mfg., Inc. v. Illinois Union Ins. Co.*,
    666 F. Supp. 2d 1185 (D. Or. 2009) ...................................................................10

*Array Holdings Inc. v. Safoco, Inc.*,
    No. H-12-366, 2013 WL 4588506 (S.D. Tex. Aug. 28, 2013) .............................17

*Atl. Permanent Fed. Sav. & Loan Ass'n v. Am. Cas. Co. of Reading, Pa.*,
    670 F. Supp. 168 (E.D. Va. 1986) .............................................................. 10-11

*Bass v. Phoenix Seadrill/78, Ltd.*,
    749 F.2d 1154 (5th Cir. 1985) ............................................................................21

*Brittan Communications Intern. Corp. v. Southwestern Bell Telephone Co.*,
    177 F. Supp. 2d 580 (S.D. Tex. 2001) ................................................................7

*Burks v. XL Specialty Ins. Co.*,
    No. 14-14-00740-CV, 2015 WL 6949610 (Tex. App.—Houston [14th Dist.]
    Nov. 10, 2015, no writ)..............................................................................2, 16

*Companion Prop. & Cas. Ins. Co. v. Opheim*,
    92 F. Supp. 3d 539 (N.D. Tex. 2015) .................................................................13

*Connecticut General Life Ins. Co. v. Humble Surgical Hospital, LLC*,
    No. 4:13-CV-3291, 2015 WL 1311224 (S.D. Tex. Mar. 24, 2015) .........................7

*Cox Operating L.L.C. v. St. Paul Surplus Lines Ins. Co.*,
    795 F.3d 496 (5th Cir. 2015) ..............................................................................8

*Deleonardis v. U.S. Dep't of Health and Human Servs.*,
    35 F.3d 559 (5th Cir. Aug. 22, 1994)............................................................ 20-21

*Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*,
    256 S.W.3d 660 (Tex. 2008).............................................................................14

*Fairfield Ins. Co. v. Stephens Martin Paving, LP*,
    246 SW 3d 653 (Tex. 2008)...............................................................................17

*Federal Ins. Co. v. Continental Cas. Co.*,
    No. 2:05-CV-305, 2006 WL 3386625 (W.D. Pa. Nov. 22, 2006).............. 15-16, 18

*Ferris v. Ferris*,
    No. 05-08-01705-CV, 2010 WL 5158444 (Tex. App.—Dallas Dec. 21, 2010) ....................12

*Fiess v. State Farm Lloyds,*
  202 S.W.3d 744 (Tex. 2006)..................................................................17

*Fortis Benefits v. Cantu,*
  234 S.W.3d 642 (Tex. 2007)..................................................................17

*Gallup, Inc. v. Greenwich Ins. Co.,*
  No. N14C-02-136FWW, 2015 WL 1201518 (Del. Super. Feb. 25, 2015)......................17, 19

*Garcia v. Fidelity ATM, Inc.,*
  No. M-06-130, 2006 U.S. Dist. LEXIS 70069 (S.D. Tex. Sept. 27, 2006) ............................13

*Gastar Exploration Ltd. v. U.S. Specialty Ins. Co.,*
  No. 14-12-00118-CV, 2013 WL 3693603 (Tex. App.—Houston [14th Dist.]
  July 16, 2013, no pet.)........................................................................8

*Harbor Ins. Co. v. Trammell Crow Co., Inc.,*
  854 F.2d 94 (5th Cir. 1988) ...............................................................15

*Howard v. Burlington Ins. Co.,*
  347 S.W.3d 783 (Tex.App.—Dallas 2011, no pet.)..............................................11

*Hurst v. American Racing Equipment, Inc.,*
  981 S.W.2d 458 (Tex. App.—Texarkana 1998, no pet.) .......................................17

*Ins. Concepts, Inc. v. Western Life Ins. Co.,*
  639 F.2d 1108 (5th Cir. 1981) ...........................................................21

*John M. O'Quinn P.C. v. National Union Fire Ins. Co. of Pittsburgh, PA,*
  33 F. Supp. 3d 756 (S.D. Tex. 2014) ..................................................20, 22

*Lamar Homes, Inc. v. Mid-Continent Cas. Co.,*
  242 S.W.3d 1 (Tex. 2007).................................................................13

*LCS Corr. Servs., Inc. v. Lexington Ins. Co.,*
  800 F.3d 664, 669 (5th Cir. 2015) ...................................................8-9

*Lifespan Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA,*
  59 F. Supp. 3d 427 (D.R.I. 2014).........................................................11

*Loyalty Conversion Systems Corp. v. American Airlines, Inc.,*
  66 F. Supp. 3d 829 (E.D. Tex. 2014) ...................................................8

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986).......................................................................7

*MCI Telecommunications Corp. v. Texas Utilities Elec. Co.,*
  995 S.W.2d 647 (Tex. 1999)..............................................................14

*Mesa Operating Co. v. Cal. Union Ins. Co.*,
  986 S.W.2d 749 (Tex. App.—Dallas 1999, pet. denied) ........................................13

*Mid-Continent Cas. Co. v. Bay Rock Operating Co.*,
  614 F. 3d 105 (5th Cir 2010) ........................................................................13, 14

*Miller v. Republic Nat'l Life Ins. Co.*,
  559 F.2d 426 (5th Cir. 1977) ...............................................................................21

*Muschany v. United States*,
  324 U.S. 49 (1945) ...............................................................................................15

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*,
  811 S.W.2d 552 (Tex. 1991) .............................................................................9, 12

*Nat'l Union Fire Ins. Co. v. Continental Illinois Corp.*,
  666 F. Supp. 1180 (N.D. Ill. 1987) .......................................................................10

*National Union Fire Ins. Co. of Pittsburgh, PA v. U.S. Bank, Nat. Ass'n*,
  No. 4:07-CV-1958, 2008 WL 2405975 (S.D. Tex. June 11, 2008)........................20

*Nortex Oil & Gas Corp. v. Harbor Ins. Co.*,
  456 S.W.2d 489 (Tex. Civ. App.—Dallas 1970, no writ) ......................... 19, 21-22

*Peerless Ins. Co. v. Pennsylvania Cyber Charter School*,
  19 F. Supp. 3d 635 (W.D. Pa. 2014)......................................................................18

*Pendergest–Holt v. Certain Underwriters at Lloyd's of London*,
  600 F.3d 562 (5th Cir. 2010) ................................................................................10

*In re Prime Ins. Co.*,
  No. 13-14-00490–CV, 2014 WL 5314514 (Tex. App.—Corpus Christi
  Oct. 16, 2014) .......................................................................................................11

*Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*,
  467 S.W.3d 494 (Tex. 2015).....................................................................................9

*RSUI Indemnity Co. v. The Lynd Co.*,
  466 S.W.3d 113 (Tex. 2015)...................................................................................15

*Saratoga Resources, Inc. v. American Intern. Group, Inc.*,
  102 F. Supp. 3d 915 (S.D. Tex. 2015) ...................................................................12

*Shindler v. Mid–Continent Life Ins. Co.*,
  768 S.W.2d 331, 334 (Tex.App.—Houston [14th Dist.] 1989, no writ) .................11

*Starr Indem. & Liab. Co. v. SGS Petroleum Serv. Corp.*,
  719 F.3d 700 (5th Cir. 2013) ................................................................................14

*Tamimi Global Co. Ldt. v. Kellogg Brown & Root LLC*,
  No. H-11-0585, 2011 WL 1157634 (S.D. Tex. Mar. 24, 2011) .............................................9

*TIG Ins. Co. v. Sedgwick James of Washington*,
  276 F.3d 754 (5th Cir. 2002) ................................................................................. 7-8

*Town of Flower Mound v. Stafford Estates Ltd. P'ship*,
  135 S.W.3d 620 (Tex. 2004)...................................................................................16

*In re TransTexas Gas Corp.*,
  597 F.3d 298 (5th Cir. 2010) ....................................................................16, 19, 20

*Trinity Universal Ins. Co. v. Cowan*,
  945 S.W.2d 819 (Tex. 1997)...................................................................................11

*Trosclair v. Chevron U.S.A., Inc.*,
  161 F. Supp. 2d 739 (S.D. Tex. 2001) ...................................................................17

*U.S. Bank Nat. Ass'n v. Indian Harbor Ins. Co.*,
  No. 12-cv-3175, 2014 WL 3012969 (D. Minn. July 3, 2014) ...........................18, 19

*U.S. Enterprises, Inc. v. Dauley*,
  535 S.W.2d 623 (Tex. 1976)...................................................................................12

*Van Duzer v. U.S. Bank Nat. Ass'n*,
  995 F. Supp. 2d 673 (S.D. Tex. 2014) .....................................................................8

*Virginia Mason Medical Center v. Exec. Risk Indem. Inc.*,
  No. C07-0636MJP, 2007 WL 3473683 (W.D. Wash. Nov. 14, 2007).............. 16-17

*W.R. Grace & Co. v. Local Union 759, Intern. Union of Rubber Workers*,
  461 U.S. 757 (1983).................................................................................................15

*William Beaumont Hospital v. Fed. Ins. Co.*,
  552 Fed. App'x 494 (6th Cir. 2014) ......................................................................18

*Wojtunik v. Kealy*,
  No. CV-03-2161-PHX-PGR, 2011 WL 1211529 (D. Ariz. Mar. 31, 2011) ..........10

**Statute**

Tex. Civ. Prac. & Rem. Code Ann. § 154.002 (Vernon 2005)....................................17

**Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................................7

Fed. R. Civ. P. 12(c) ......................................................................................................7

Fed. R. Civ. P. 56(e) ....................................................................................................................7

**Other Authorities**

William E. Knepper et al., 2-25 LIABILITY OF CORPORATE OFFICERS AND
   DIRECTORS § 25.10, 1 (Matthew Bender ed., 8th ed. 2013) ...............................................11

Merriam-Webster Online Dictionary. 2016. http://www.merriam-
   webster.com/dictionary/remuneration (27 May 2016) ..........................................................10

## I.      INTRODUCTION

In this declaratory judgment action, Twin City Insurance Company ("Twin City") asks this Court to do something that no other Texas court has done: void coverage for the *settlement* of a disgorgement *claim* against its insureds in the face of an express provision in the policy preserving such coverage.  Twin City seeks to accomplish this goal through an exclusion in the definition of "damages" for "matters uninsurable pursuant to applicable law."  Not only does Twin City's request ignore numerous rules of contract interpretation, it is a bold attempt to rewrite its policy.  Courts around the country have rejected insurers' attempts to avoid their coverage obligations through a similar "public policy" argument and this Court should do the same.

Twin City's sole request for relief also disregards a bargained for exchange in the policy. The policy eliminates coverage for damages arising from disgorgement but only if there is a *final and nonappealable adjudication* in the underlying lawsuit establishing such a claim.  In other words, an insured can have her day in court but a final judgment requiring disgorgement (*i.e.*, a personal profit to which she is not entitled) is excluded by the policy.  However, anything short of a final adjudication—such as a settlement—preserves coverage.  That is the plain language in the policy.  The Oceaneering Defendants, required under Texas law to read and understand their insurance policy, could not have had a different understanding of the protections they were purchasing from Twin City.

Finally, it is important to note that the allegations against the Oceaneering Directors in the Delaware lawsuit are just that—they are unproven accusations that are vigorously disputed by all of the insureds.  The Oceaneering Directors have not admitted any liability for the conduct alleged against them nor do they intend to do so in connection with any settlement.  Moreover, there is nothing particularly unusual or nefarious about a shareholder derivative action

challenging the management decisions of a company's directors; in fact, Twin City makes a direct reference to such actions in its policy.[1]   A shareholder derivative lawsuit alleging overcompensation of directors is just one of the many types of litigation risks faced by a company's board.   The fact that both defense costs and settlements are expressly excepted from the "personal profit" exclusion in Twin City's policy further confirms that *unproven allegations* are treated quite differently—under the case law and in the language of the policy—than adjudicated liability.

As the sole ground for relief in Twin City's Declaratory Judgment Action is contrary to the canons of Texas insurance law and the express language of Twin City's policy, the Oceaneering Defendants are entitled to judgment on the pleadings.

## II.   LEGAL ISSUE PRESENTED

The sole legal issue presented in this motion, and in Twin City's request for declaratory relief, is whether Texas public policy precludes the Oceaneering Defendants from recovering under the Twin City Policy amounts paid to settle allegations of disgorgement.   Twin City's Policy and recent Texas case law compel a "no" answer to this question.   As the Fourteenth Court of Appeals recently confirmed, "no Texas court has held that insuring a settlement of a claim seeking restitution or disgorgement is against public policy or otherwise generally 'uninsurable under the law' of Texas; nor has the Legislature enacted any legislation on point." *Burks v. XL Specialty Ins. Co.*, No. 14-14-00740-CV, 2015 WL 6949610, at *9 (Tex. App.—Houston [14th Dist.] Nov. 10, 2015, no writ).

---

[1] A "Derivative Action" is expressly covered by the Twin City Policy.  Dkt No. 1-3 ("Policy") at §§ I(C), (D).

## III.    BACKGROUND

### A.    The Twin City Policy

1.      Oceaneering is a Houston-based engineering company that primarily provides engineered services and products to the oil and gas industry worldwide.  *Peter L. Jacobs, derivatively on behalf of Oceaneering International, Inc. v. Huff, et al.*, No. 9774 (Del. Ch.), Dkt No. 18, Brief in Support of Defendants' Motion to Dismiss Plaintiff's Stockholder Derivative Complaint With Certificate of Service ("Motion to Dismiss in Derivative Action") at p. 7.

2.      In 2013, Oceaneering purchased $10 million of primary directors and officers coverage from Twin City in the form of a D&O Premier Defense Policy, No. 00 DA 0100989-13, with a policy period from August 1, 2013 through August 1, 2014 (the "Policy").  Policy; Dkt No. 1 ("Twin City's Complaint") at ¶ 3; Dkt No. 16 ("Defendants' Answer and Counterclaim") at ¶ 11.

3.      The Oceaneering Defendants are covered insureds under the Policy.  Policy at §§ II(M), (R).

4.      Twin City committed to fund all Loss[2] that the Oceaneering Defendants become legally obligated to pay on account of any Claim first made during the Policy Period for a Wrongful Act (any actual or alleged error, act, omission, neglect or breach of duty committed by any Director or Officer in his or her capacity as such).  Policy at Endorsement 10 and § II(HH); Twin City's Complaint at ¶¶ 26, 33; Defendants' Answer and Counterclaim at ¶¶ 15-16.

5.      Loss includes Damages, which is defined broadly and includes amounts paid in settlements, judgments and costs awarded pursuant to judgments and appeals.  Policy at Endorsement 10 at § III(C); Defendants' Answer and Counterclaim at ¶ 19.

---

[2]  All capitalized terms herein are used for the same meaning as set forth in the Policy.

6.     The Policy excludes from the definition of Damages "amounts for matters uninsurable pursuant to applicable law" (the "Uninsurable Provision").  Policy at Endorsement 10 at § III(C); Twin City's Complaint at ¶ 40; Defendants' Answer and Counterclaim at ¶ 19. The Policy does not provide a further explanation of the meaning of that phrase.

7.     Oceaneering and Twin City also expressly agreed that the Policy would exclude coverage for Damages "of an Insured, based upon, arising from, or in any way related to the gaining of any personal profit, remuneration or financial advantage to which such Insured is not legally entitled *if* any final and nonappealable adjudication other than an action or proceeding initiated by the Insurer to determine coverage under the policy, establishes such gain" (the "Personal Profit Exclusion").  Policy at Endorsement 10 at § III(D) (emphasis added).

**B.     Oceaneering's Board Of Directors**

8.     Historically, Oceaneering has had a small Board of Directors, consisting of several seasoned directors with company-specific experience.  Motion to Dismiss in Derivative Action at pp. 7-8.

9.     The following non-employee and employee directors made up the Oceaneering Board of Directors from 2011-2014:

   a.  John R. Huff – current non-employee director (former CEO and Chairman of the Board);

   b.  T. Jay Collins – current non-employee director (former CFO, President, COO, and CEO);

   c.  Jerold DesRoche –current non-employee director (2003-present);

   d.  D. Michael Hughes – current non-employee director (1970-present);

   e.  Harris J. Pappas – current non-employee director (1996-present);

   f.  Paul B. Murphy, Jr. – current non-employee director (2012-present);

g.   David S. Hooker – retired non-employee director (1973-2013); and

h.   M. Kevin McEvoy – current employee director (former President and CEO).

Motion to Dismiss in Derivative Action at p. 8.

10.     Like many other public companies, Oceaneering compensates its board members with remuneration for their services.  Motion to Dismiss in Derivative Action at p. 9.

11.     Oceaneering retained a compensation consultant in order to assist the company in assessing Oceaneering's compensation for nonemployee directors relative to the compensation paid at peer companies.  Motion to Dismiss in Derivative Action at p. 7.

12.     Oceaneering's stockholders have approved Oceaneering's Incentive Plans that provide for the granting of various equity and cash awards to Oceaneering's officers, employees and non-employee directors.  Motion to Dismiss in Derivative Action at pp. 9-11.

**C.     The Derivative Action**

13.     On June 17, 2014, a shareholder of Oceaneering – Peter L. Jacobs – filed a derivative action against the Oceaneering Directors in the Court of Chancery of the State of Delaware styled *Peter L. Jacobs, derivatively on behalf of Oceaneering International, Inc. v. Huff, et al.*, No. 9774 (Del. Ch.) (the "Derivative Action").

14.     The Derivative Action alleges, among other things, that the Oceaneering Directors breached their fiduciary duties by paying themselves excessive and unfair compensation.  Dkt No. 1-2 ("Derivative Action Complaint") at ¶ 1.

15.     Specifically, Jacobs alleges that from 2011-2014, the Oceaneering Directors granted themselves compensation in amounts that were grossly excessive when compared to what typical directors in similar positions were paid for performing similar services.  Derivative Action Complaint at ¶ 3.

16.     Jacobs alleges two counts against the Oceaneering Directors:  (i) breach of fiduciary duty, and (ii) unjust enrichment.[3]  Derivative Action Complaint at ¶¶ 73-74 and 78-79.

17.     Jacobs seeks compensatory damages as well as equitable relief, disgorgement, interest and attorneys' fees.  Derivative Action Complaint at Prayer for Relief.

**D.     Oceaneering Seeks To Settle The Derivative Action But Twin City Refuses To Contribute To Any Settlement**

18.     The Oceaneering Directors continue to vigorously defend themselves in the Derivative Action, arguing that the challenged transactions were made under a stockholder-approved plan and that the compensation granted is commensurate with the Oceaneering Directors' wealth of experience and the company's record earnings over the time period in question.  Motion to Dismiss in Derivative Action at pp. 19, 28.

19.     Beginning in 2015, the Oceaneering Directors began entering into settlement discussions with Jacobs' counsel.  Those discussions are ongoing.  Defendants' Answer and Counterclaim at ¶ 10; Dkt No. 20 ("Twin City's Answer to Defendants' Counterclaim") at ¶ 10.

20.     The Oceaneering Defendants have kept, and are keeping, Twin City fully informed of mediation and/or settlement negotiations in the Derivative Action.  Defendants' Answer and Counterclaim at ¶ 43; Twin City's Answer to Defendants' Counterclaim at ¶ 43.

21.     Twin City has advised the Oceaneering Defendants that it refuses to cover any settlement of the Derivative Action, taking the position that any settlement would constitute uninsurable disgorgement.   Twin City's Complaint at ¶¶ 42-43; Defendants' Answer and Counterclaim at ¶¶ 31-32; Twin City's Answer to Defendants' Counterclaim at ¶ 32.

22.     On March 14, 2016, Twin City filed this action seeking a declaration from the Court that it has no duty to indemnify the Oceaneering Defendants with respect to any settlement

---

[3] Jacobs does not allege unjust enrichment against Director McEvoy.

of the Derivative Action because insurance coverage for disgorgement damages is contrary to Texas public policy.  Twin City's Complaint at ¶ 5.

23.     Thereafter, on April 7, 2016, the Oceaneering Defendants filed their Answer, Defenses and Counterclaim for Declaratory Relief, seeking a declaration that Texas public policy does not relieve Twin City of its obligation to cover a settlement of the disgorgement claims alleged in the Derivative Action.  Defendants' Answer and Counterclaim at ¶ 6.

24.     The parties jointly agreed to file cross motions addressing this legal issue.  Dkt No. 19 (Joint Discovery/Case Management Plan) at ¶ 10(A).

## IV.   LEGAL STANDARD

Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The same standard as applied in a Rule 12(b)(6) motion to dismiss is used in deciding a Rule 12(c) motion.  *Connecticut General Life Ins. Co. v. Humble Surgical Hospital, LLC*, No. 4:13-CV-3291, 2015 WL 1311224, at *3 (S.D. Tex. Mar. 24, 2015).  "In reviewing a motion for judgment on the pleadings, a district court must view the facts presented in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party."  *Brittan Communications Intern. Corp. v. Southwestern Bell Telephone Co.*, 177 F. Supp. 2d 580, 584 (S.D. Tex. 2001), *aff'd*, 313 F.3d 889 (5th Cir. 2002).

To defeat a motion for judgment on the pleadings, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(e)) (emphasis in original).  The non-movant cannot avoid a motion for judgment on the pleadings simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation…"  *TIG Ins. Co. v. Sedgwick James of*

*Washington*, 276 F.3d 754, 759 (5th Cir. 2002).  The Court "may consider not only the pleadings themselves, but also any exhibits to the pleadings or matters incorporated by reference in the pleadings, as long as all the material allegations of fact are undisputed and only questions of law remain to be decided by the court."  *Loyalty Conversion Systems Corp. v. American Airlines, Inc.*, 66 F. Supp. 3d 829, 834 (E.D. Tex. 2014) (citing 5C Charles Alan Wright and Arthur R. Miller, Federal Practice & Procedure § 1367, at 207–08 (3d ed. 2004)).  In addition, the Court "may take judicial notice of matters of public record, including pleadings filed in state court." *Van Duzer v. U.S. Bank Nat. Ass'n*, 995 F. Supp. 2d 673, 684 (S.D. Tex. 2014), *aff'd*, 582 Fed. App'x 279 (5th Cir. 2014).

## V.    ARGUMENT

### A.    Twin City Bears the Burden of Proving That Any Express or Implied Exclusion Negates The Oceaneering Defendants's Entitlement to Coverage

The burden of proof in this action rests squarely on Twin City to prove that the Uninsurable Provision and/or Texas public policy preclude coverage for a settlement of the Derivative Action.  With respect to the Uninsurable Provision, the location of an exclusion or coverage limitation—whether enumerated as an exception to the definition of Damages or listed in a stand-alone section of the policy titled "Exclusions"—does not alter an insurer's burden of proof.  *See Cox Operating, L.L.C. v. St. Paul Surplus Lines Ins. Co.*, 795 F.3d 496, 502 (5th Cir. 2015) (noting that courts should not focus on a provision's "location in the policy"); *Gastar Exploration Ltd. v. U.S. Specialty Ins. Co.*, No. 14-12-00118-CV, 2013 WL 3693603, at *5 (Tex. App.—Houston [14th Dist.] July 16, 2013, no pet.) (holding that any language that reduces the scope of coverage is limiting language that should be treated as an exclusion).  The uninsurability language in the Policy's definition of Damages functions as an exclusion, and thus must be strictly construed against Twin City.  *See, e.g., LCS Corr. Servs., Inc. v. Lexington Ins.*

*Co.*, 800 F.3d 664, 669 (5th Cir. 2015) ("We recognize that insurance terms, particularly exclusions, are strictly construed against the insurer, and, as appropriate, in favor of the insured") (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)).

Twin City also shoulders the burden because its argument is based on public policy. Texas law is clear that the burden of invalidating a contract on public policy grounds rests with the "party opposing the contract." *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499-500 (Tex. 2015). *See also Tamimi Global Co. Ldt. v. Kellogg Brown & Root LLC*, No. H-11-0585, 2011 WL 1157634, at *3 (S.D. Tex. Mar. 24, 2011) (noting that a party must satisfy "its burden to show that public policy considerations should cause this Court to refuse to enforce [an] otherwise valid [agreement]"). As discussed below, courts enforcing this strict burden consistently reject insurers' arguments that public policy precludes coverage for a settlement because the insured's loss was "uninsurable disgorgement." Because Twin City cannot meet its burden in this case, Twin City's Declaratory Judgment Action should be dismissed with prejudice.

### B. Twin City's "Uninsurability" Argument Cannot Be Reconciled With The Final Adjudication Requirement In The Policy's Personal Profit Exclusion

Twin City contends in this action that any settlement resulting in the return of some or all of the Oceaneering Directors' allegedly excessive compensation is uninsurable as a matter of Texas public policy, relying on the "uninsurable pursuant to applicable law" exclusion in the definition of Damages. Twin City's Complaint at ¶ 43; Policy at § II(C). This coverage position, however, is at odds with another provision in Twin City's Policy. The parties contracted to address disgorgement damages in the Personal Profit Exclusion,[4] which excludes

---

[4] The Personal Profit Exclusion provides:

Damages arising from "the gaining of any personal profit, remuneration or financial advantage to which such Insured is not legally entitled…"[5]  Policy at § V(D)(1) & Endorsement 10 at VI(D)(1).  Importantly, there is an exception to this exclusion for settlements.  The Personal Profit Exclusion only applies when there is a "final and nonappealable adjudication" establishing illegal profit, remuneration or financial advantage "other than an action or proceeding initiated by the Insurer to determine coverage under the policy."[6]  *Id.*  This exclusion does not apply to settlements.  *See Pendergest–Holt v. Certain Underwriters at Lloyd's of London*, 600 F.3d 562, 572-73 (5th Cir. 2010) (Texas law) ("[A] final adjudication exclusion limits the insurer's recourse if the parties settle—the most likely outcome—or if the insured is otherwise absolved of liability or guilt in the underlying action").[7]  Consequently, no inference of unlawful gain or

<hr/>

> [T]he Insurer shall not pay Damages:
>
> (1)      of an Insured, based upon, arising from, or in any way related to the gaining of any personal profit, remuneration or financial advantage to which such Insured is not legally entitled if any final and nonappealable adjudication other than an action or proceeding initiated by the Insurer to determine coverage under the policy, establishes such gain;

Policy at Endorsement No. 10 at § VI(D)(1) (the "Personal Profit Exclusion").

[5]  Webster's Dictionary defines "remuneration" as:  "an amount of money paid to someone for the work that person has done."  Merriam-Webster Online Dictionary. 2016. http://www.merriam-webster.com/dictionary/remuneration (27 May 2016).

[6]  The exception to the exclusion was further enhanced by endorsement to add the "other than an action or proceeding initiated by the Insurer to determine coverage under the policy" language.  Policy at Endorsement 10 at § VI(D)(1).

[7]  *See also Wojtunik v. Kealy*, No. CV-03-2161-PHX-PGR, 2011 WL 1211529, at *9 (D. Ariz. Mar. 31, 2011) (concluding that the term "final adjudication" in a fraud exclusion did not apply to settlements and holding that "the mere existence of the stipulated settlement cannot be deemed to have established as a matter of law that the Insureds committed deliberate securities fraud so as to invoke the [personal profit] exclusion"); *Alexander Mfg., Inc. v. Illinois Union Ins. Co.*, 666 F. Supp. 2d 1185, 1200 (D. Or. 2009) ("'final adjudication' means a final judicial decision"); *Nat'l Union Fire Ins. Co. v. Continental Illinois Corp.*, 666 F. Supp. 1180, 1197 (N.D. Ill. 1987) (construing "a judgment or other final adjudication" to mean a final judicial decision and holding that, once the underlying claims settled, the insurer could not later litigate the question of dishonesty); *Atl. Permanent Fed. Sav. & Loan Ass'n v. Am. Cas. Co. of*

profit is to be drawn in the event of a settlement, and Texas public policy is not offended if insurance coverage is obtained under such circumstances.

The "final and nonappealable adjudication" exception to the Personal Profit Exclusion is an enhancement to the Policy—a point which Twin City concedes.  Twin City's Answer to Defendants' Counterclaim at ¶ 30.   This enhancement was designed and marketed to policyholders in order to expressly require a final adjudication before the alleged disgorgement would be excluded.[8]  By including this enhancement in its D&O policy, Twin City confirms that the Policy reinstates coverage for *allegations* of ill-gotten gains.  Simply put, Twin City cannot sell a policy that unambiguously restores coverage for settlements of disgorgement claims and then try to escape its promise of coverage under the purported protection of Texas public policy.

In Texas, policy language is meaningful and often relied upon by insureds.  *See, e.g.*, *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 828 (Tex. 1997) (finding that adopting the insurer's approach "would render insurance coverage illusory for many of the things for which insureds commonly purchase insurance"); *In re Prime Ins. Co.*, No. 13-14-00490–CV, 2014 WL 5314514, at *9 (Tex. App.—Corpus Christi Oct. 16, 2014) ("[A]n insured is charged with knowledge of the provisions of the insurance policy…").[9]  Twin City chose to offer a coverage

---

*Reading, Pa.*, 670 F. Supp. 168, 170-71 (E.D. Va. 1986) (dishonesty exclusion requiring "final adjudication" in directors and officers insurance policy was "moot by reason of the settlement of the underlying action").

[8]   *See, e.g.*, William E. Knepper et al., 2-25 LIABILITY OF CORPORATE OFFICERS AND DIRECTORS § 25.10, 1 (Matthew Bender ed., 8th ed. 2013), (A2681) ("Historically, [personal profit exclusions] did not require a final adjudication in the underlying D&O litigation . . . However, most D&O policies now require a judgment or final adjudication to trigger the exclusion").

[9]   *See also Howard v. Burlington Ins. Co.*, 347 S.W.3d 783, 792 (Tex. App.—Dallas 2011, no pet.) ("Texas law is clear that … the insured has a duty to read and be familiar with the terms of his own insurance policy"); *Shindler v. Mid–Continent Life Ins. Co.*, 768 S.W.2d 331, 334 (Tex. App.—Houston [14th Dist.] 1989, no writ) ("An insured will be deemed to know the contents of the contract he makes"); *Lifespan Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 59 F. Supp. 3d 427, 443 (D.R.I. 2014)

enhancement to the Oceaneering Defendants knowing full well that it expressly reestablishes coverage for settlements of disgorgement claims.  It should not now be permitted to use the Uninsurable Provision as an escape hatch to avoid the coverage it promised to provide.

### C.   Twin City's Interpretation Of The Policy Violates Well-Established Canons Of Construction

By ignoring the Personal Profit Exclusion and focusing myopically on the Uninsurable Provision, Twin City also tries to circumvent black letter law on contract interpretation.  Under Texas law, an insurance policy "must be read as a whole, and effect must be given to all parts if possible." *Saratoga Resources, Inc. v. American Intern. Group, Inc.*, 102 F. Supp. 3d 915, 919 (S.D. Tex. 2015), *aff'd sub nom.*, *Saratoga Resources, Inc. v. Lexington Ins.*, No. 15-20343, slip op. (5th Cir. Mar. 22, 2016).  Twin City's proffered coverage position would read the "final and nonappealable adjudication" language of the Personal Profit Exclusion out of the policy.  That interpretation is unreasonable and not consistent with Texas law.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991) (if "a contract of insurance is susceptible of more than one reasonable interpretation, [the court] must resolve the uncertainty by adopting the construction that most favors the insured").

Moreover, Twin City seeks to enforce a general and undefined "uninsurable pursuant to applicable law" provision over a more specific exception to the Personal Profit Exclusion that expressly addresses the exact circumstances at issue here.  That too is inconsistent with the tenets of Texas contract interpretation.  *See, e.g.*, *U.S. Enterprises, Inc. v. Dauley*, 535 S.W.2d 623, 635 (Tex. 1976) ("[I]t is a well-known rule of construction that specific language of description controls more general language"); *Ferris v. Ferris*, No. 05-08-01705-CV, 2010 WL 5158444, at *4 (Tex. App.—Dallas Dec. 21, 2010) ("[S]pecific and exact terms are given greater weight than

---

(finding coverage for claims of breach of fiduciary duty and unjust enrichment, among others, noting that those claims were "likely the kind of risk for which [the policyholder] sought D & O coverage").

general language") (citation omitted); *Garcia v. Fidelity ATM, Inc.*, No. M-06-130, 2006 U.S. Dist. LEXIS 70069, at *7 (S.D. Tex. Sept. 27, 2006) ("[T]he Court cannot accept a reading of a clause that allows its preliminary, general language to render the remaining, more specific language ineffectual").

Twin City's position is also precluded by the Fifth Circuit's decision in *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F. 3d 105 (5th Cir 2010).  In the *Bay Rock* case, Mid-Continent argued that the "j" exclusions—one of the business risk exclusions in a CGL policy that addresses damage to the insured's work—in Bay Rock's policy excluded all of the property damage arising from Bay Rock's drilling operations.  That interpretation of the policy, however, ignored an Oil & Gas Endorsement that added coverage for the very property damage that Mid-Continent was attempting to exclude.[10]  Both the district court and Fifth Circuit rejected Mid-Continent's position.

The Fifth Circuit first noted that the provisions found "in the main 'policy and endorsement should be construed together unless' doing so would negate or render superfluous the additional coverage afforded in the endorsement."  *Id*. at 115 (citing *Mesa Operating Co. v. Cal. Union Ins. Co.*, 986 S.W.2d 749, 754-55 (Tex. App.—Dallas 1999, pet. denied) ("Endorsements to a policy generally supersede and control over conflicting printed terms within the main policy")).  Twin City's declaratory judgment action ignores that basic rule.  Applying

---

[10]   Texas courts have not recognized a substantive difference between a grant of coverage and the reinstatement of coverage through an exception to an exclusion.  *See, e.g.*, *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 14 (Tex. 2007) (recognizing that an exception does not create coverage, the court nonetheless concluded that the subcontractor exception "reinstates coverage that would otherwise be excluded under the your work exclusion"); *Companion Prop. & Cas. Ins. Co. v. Opheim*, 92 F. Supp. 3d 539, 550 (N.D. Tex. 2015) (observing that "the 'products-completed operations hazard' exception to the j(6) exclusion reinstates coverage for 'property damage' arising from 'your work' whenever the project 'has been completed or abandoned'").

that rule to the facts before it, the *Bay Rock* court held that "j" exclusions did not apply to any of the damages at issue:

> If we accepted Mid-Continent's interpretation of 2.j.(6), as applying to any and all property damage to Striebeck No. 1, we would still find 2.j.(6) inapplicable because Mid-Continent's interpretation would cause an irreconcilable conflict between the exclusion and the additional coverage purchased by Bay Rock in the Oil & Gas Endorsement. . . . The application of exclusion 2.j.(6), as interpreted by Mid-Continent, would exclude from coverage all the additional property damage coverage described within the Oil & Gas Endorsement. Accordingly, even if we accepted Mid-Continent's interpretation, we would still find exclusion 2.j.(6) inapplicable because Mid-Continent's interpretation would lead us to conclude that the exclusion was superseded.

*Id.* at 116. *See also Starr Indem. & Liab. Co. v. SGS Petroleum Serv. Corp.*, 719 F.3d 700 (5th Cir. 2013) (finding endorsement trumped notice provision in main policy).

Here, Twin City's interpretation of its "uninsurable pursuant to applicable law" exclusion—that it precludes coverage for settlements of disgorgement claims—would cause an irreconcilable conflict with the "final and nonappealable adjudication" exception to the Personal Profit Exclusion, which was designed to reinstate coverage for disgorgement claims that are settled before trial. A court "cannot adopt a construction that renders any portion of a policy meaningless, useless, or inexplicable." *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 668 n. 27 (Tex. 2008). Rather, the court must "examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be meaningless." *MCI Telecommunications Corp. v. Texas Utilities Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999). When the Twin City Policy is construed as a whole, the Uninsurable Provision cannot apply because Twin City's interpretation would lead this Court to conclude that the "final and nonappelable adjudication" exception to the Personal Profit Exclusion is meaningless or superseded.

- 14 -

Had Twin City intended to exclude coverage for settlements involving the gaining of any "personal profit, remuneration or financial advantage to which such Insured is not legally entitled," it could have drafted its policy accordingly. *See, e.g.*, *Harbor Ins. Co. v. Trammell Crow Co., Inc.*, 854 F.2d 94, 99 (5th Cir. 1988) (denying insurers' motion for summary judgment, finding insurer "could have drafted its policy language narrowly to obtain the result it now seeks to impose, but did not do so"); *RSUI Indemnity Co. v. The Lynd Co.*, 466 S.W.3d 113, 137 (Tex. 2015) (granting policyholder's motion to dismiss where insurer "could have drafted the policy to unambiguously apply the [] limits it seeks to impose."). Instead, Twin City drafted the Policy to provide coverage under these very circumstances.

Twin City should not be allowed to bind a policy with coverage enhancements for particular damages and then argue that those damages are "uninsurable" under Texas law once a claim arises. Twin City's request for a declaration justifying that conduct is fatally flawed and, thus, its claims against the Oceaneering Defendants should be dismissed with prejudice.

### D. Texas Public Policy Does Not Prohibit Insurance Coverage For The Settlement Of The Derivative Action

Notwithstanding Twin City's inability to reconcile Texas rules of construction with its coverage position, Twin City's public policy argument is also unavailing. An insurer may refuse to pay an otherwise covered claim based on "public policy" only if such public policy is "well defined and dominant" and easily ascertained by reference to statutes and legal precedents. *W.R. Grace & Co. v. Local Union 759, Intern. Union of Rubber Workers*, 461 U.S. 757, 766 (1983) (quoting *Muschany v. United States*, 324 U.S. 49, 66 (1945)). Thus, if Twin City "wishes to prevail on a generic 'public policy' ground, as opposed to the more specific ground available under the Personal Profit Exclusion, it must demonstrate a coherent legal basis" for concluding that Texas law precludes coverage for the settlement of the Derivative Action. *Federal Ins. Co.*

- 15 -

*v. Continental Cas. Co.*, No. 2:05-CV-305, 2006 WL 3386625, at *22 (W.D. Pa. Nov. 22, 2006) (rejecting insurer's argument that disgorgement damages were "uninsurable" under Pennsylvania law).  Twin City cannot satisfy this test.

### 1.    No Texas Court Has Found Public Policy Precludes Coverage For The Settlement Of A Claim Seeking Disgorgement

In a recent and directly-on-point Texas case, the Fourteenth Court of Appeals confirmed that "no Texas court has held that insuring a settlement of a claim seeking restitution or disgorgement is against public policy or otherwise generally 'uninsurable under the law' of Texas; nor has the Legislature enacted any legislation on point."  *Burks v. XL Specialty Ins. Co.*, No. 14-14-00740-CV, 2015 WL 6949610, at *9 (Tex. App.—Houston [14th Dist.] Nov. 10, 2015, no writ).  *See also Town of Flower Mound v. Stafford Estates Ltd. P'ship,* 135 S.W.3d 620, 628 (Tex. 2004) ("Generally, the State's public policy is reflected in its statutes").  In *Burks*, XL moved for summary judgment on the grounds that it had no duty to indemnify a chief financial officer for the settlement of an underlying claim for disgorgement alleging, as Twin City does here, that such settlement was not covered under the policy's definition of loss.  Specifically, the underlying bankruptcy claim sought disgorgement of the officer's compensation, bonuses and benefits made while the company was insolvent.

The *Burks* court acknowledged, citing *In re TransTexas Gas Corp.*, 597 F.3d 298, 310 (5th Cir. 2010), that a "*judgment* ordering the repayment of a fraudulent transfer under the Bankruptcy Code may indicate that an insured has paid restitution or disgorgement."  *Burks*, 2015 WL 6949610, at *8 (emphasis added).  However, "the mere fact of settlement does not indicate admission of the allegations in a complaint."[11]  *Id.*  Because no Texas court has ever

---

[11] Courts generally do not permit insurers to "rely on allegations in the [underlying complaint] as objective verification for the illegality of [their insured's] conduct."  *Virginia Mason Medical Center v. Exec. Risk Indem. Inc.,* No. C07-0636MJP, 2007 WL 3473683, at *5 (W.D. Wash. Nov. 14, 2007), *aff'd*,

held that insuring a *settlement* of a claim seeking disgorgement was against public policy or uninsurable, the *Burks* court refused to be the first to do so. *Id.* at *9. The holding in *Burks* is also consistent with the policy of Texas to "encourage the peaceable resolution of disputes . . . and the early settlement of pending litigation through voluntary settlement procedures." TEX. CIV. PRAC. & REM. CODE ANN. § 154.002 (Vernon 2005). *See also Array Holdings Inc. v. Safoco, Inc.*, No. H-12-366, 2013 WL 4588506, at *1 (S.D. Tex. Aug. 28, 2013) ("The law strongly favors settlement of litigation") (citation omitted).

Other Texas courts have similarly declined to invoke public policy consideration in order to override the express terms of an insurance policy. *See, e.g.*, *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 670 (Tex. 2008) (finding that the public policy of Texas does not override express coverage for exemplary damages in workers' compensation policies); *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 649 (Tex. 2007) (advising that "balancing dueling policy concerns is generally for non-judicial bodies" and that courts should not "contravene the express language of insurance contracts with equitable arguments"); *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 745 (Tex. 2006) ("The question in this case is not whether insurers should provide mold coverage in Texas, a public policy question beyond our jurisdiction as a court. The question instead is whether the language in an insurance policy provides such coverage-no more and no less").

---

331 Fed. App'x 473 (9th Cir. 2009). *See also Gallup,* 2015 WL 1201518 at *10 (finding that, where the insurer "merely relies on the allegations set forth in the [underlying] Complaint to establish that the settlement is for restitution…[t]he Court cannot determine that the Settlement is for restitution as a matter of law based upon that assertion alone"). Nor will courts allow an insurance company to treat settlements of such allegations as proxies for judicial findings. *See, e.g., Trosclair v. Chevron U.S.A., Inc.,* 161 F. Supp. 2d 739, 744 (S.D. Tex. 2001) (finding that "because a settlement was reached with [Defendant], [Defendant] had not even been adjudicated at fault"); *Hurst v. American Racing Equipment, Inc.,* 981 S.W.2d 458, 462 (Tex. App.—Texarkana 1998, no pet.) (noting that because a claim had already been settled, "there was no judicial finding of liability").

Although not binding on this Court, several jurisdictions outside of Texas have recently had occasion to rule on the insurability of settlements involving restitution or disgorgement damages and have rejected insurers' reliance on purported "public policy" grounds. *See, e.g.*, *Gallup, Inc. v. Greenwich Ins. Co.*, No. N14C-02-136FWW, 2015 WL 1201518, at \*10 (Del. Super. Feb. 25, 2015) (rejecting an insurer's "attempt to construe the Settlement as offensive to public policy because it is for restitution is unpersuasive when considering the operation of [a personal profit exclusion] within the Policy"); *William Beaumont Hospital v. Fed. Ins. Co.*, 552 Fed. App'x 494, 499–500 (6th Cir. 2014) (rejecting insurer's public policy argument where insurer was unable to point to any cases holding that disgorgement is not insurable); *U.S. Bank Nat. Ass'n v. Indian Harbor Ins. Co.*, No. 12-cv-3175, 2014 WL 3012969, at \*5 (D. Minn. July 3, 2014) (holding that the insurer's argument that a settlement was not a covered loss under the policies was "misplaced" and noting that "restitution is insurable when, as here, the underlying allegations of ill-gotten gains were not finally adjudicated"); *Peerless Ins. Co. v. Pennsylvania Cyber Charter School*, 19 F. Supp. 3d 635, 647 (W.D. Pa. 2014) (noting that courts have "consistently limited the scope of the 'public policy' rationale for uninsurability" and declining to find that returned payments were uninsurable under public policy).

Courts have also recognized that the existence of a Personal Profit Exclusion completely undermines Twin City's already weak public policy argument. *See, e.g.*, *Federal Ins. Co.*, 2006 WL 3386625, at \*22-24 (finding that "[s]ince the Personal Profit Exclusion will effectively prevent the Individual Defendants from receiving a windfall, any policy-related arguments to the effect that Counts VI and VIII state claims for matters uninsurable under [applicable] law are significantly weakened").  Indeed, courts around the country have held that the issue of uninsurability "overlaps significantly with that as to the Personal Profit Exclusion."  *Id.* at 21.

- 18 -

*See also Gallup, Inc. v. Greenwich Ins. Co.*, No. N14C-02-136FWW, 2015 WL 1201518, at *10 (Del. Super. Feb. 25, 2015) ("Defendant's attempt to construe the Settlement as offensive to public policy because it is for restitution is unpersuasive when considering the operation of the [personal profit exclusion] within the Policy"); *U.S. Bank Nat. Ass'n*, 2014 WL 3012969, at *4 ("[T]o interpret the Uninsurable Provision to always preclude coverage for restitution would nullify the [personal profit exclusion], which plainly says that only a final adjudication precludes coverage for restitution.  The provision must have effect").

In short, the Uninsurable Provision in Twin City's Policy only limits coverage if a matter is actually uninsurable under Texas law.  Since neither the Texas Legislature nor any Texas court has seen fit to expressly preclude insurance coverage for settlements that include claims for disgorgement, the Uninsurable Provision cannot apply.

> **2.**      ***TransTexas*, *Nortex* And *O'Quinn* Do Not Support Twin City's Position That The Settlement Of The Derivative Action Is Uninsurable**

Twin City asks this Court to create an unwarranted sweeping expansion of Texas public policy in order to invalidate coverage for the Oceaneering Defendants' anticipated settlement.  It does so in the face of the recent decision in *Burks*, policy language covering this precise settlement scenario, no Texas legislation on point, and the absence of any decision from the Texas Supreme Court holding that insuring a settlement for disgorgement damages violates Texas public policy.

Instead, the Oceaneering Defendants anticipate that Twin City will rely on a trilogy of Texas cases that address insurance coverage for disgorgement damages but, importantly, do not address whether Texas public policy precludes coverage for a *settlement* of claims alleging disgorgement.  Those cases are *In re TransTexas Gas Corp.*, 597 F.3d 298 (5th Cir. 2010), *Nortex Oil & Gas Corp. v. Harbor Ins. Co.*, 456 S.W.2d 489 (Tex. Civ. App.—Dallas 1970, no

- 19 -

writ), and *John M. O'Quinn P.C. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 33 F. Supp. 3d 756 (S.D. Tex. 2014).  As illustrated below, these cases do not support Twin City's requested relief but instead demonstrate why the Oceaneering Defendants should prevail.

The facts in *TransTexas* are significantly different than those before this Court.  After a two-day trial, the bankruptcy court in *TransTexas* found that severance payments made to a former executive were "unlawful preferences" and "fraudulent transfers" pursuant to the Bankruptcy Code and ordered the executive to repay those amounts to the defunct company's creditors.  *In re TransTexas Gas Corp.*, 597 F.3d at 303.  The former executive sought insurance coverage for those payments.  In affirming the district court's alternative holding that the bankruptcy court judgment was not insurable,[12] the Fifth Circuit concluded that "[p]ayments fraudulent as to creditors that must therefore be repaid due to a bankruptcy court order is a disgorgement of ill-gotten gains and a restitutionary payment."  *Id.*

This finding is completely consistent with the Oceaneering Defendants' reading of the Twin City Policy: when there is a final adjudication requiring restitutionary payments, it would likely be against public policy – and certainly contrary to the Policy's express terms – to indemnify an executive who is required to disgorge those payments.  Because the Fifth Circuit based its decision upon the bankruptcy court's judgment and order of repayment, its holding is narrow and inapplicable to the circumstances before this Court.  The Fifth Circuit was not asked to balance the public policy considerations of an early settlement[13] with the insurability of claims

---

[12]  Notably, at the district court level, Judge Atlas also relied upon the policy's personal profit exclusion as an alternate ground for summary judgment in the insurer's favor, finding that the "Bankruptcy Court's opinion establishe[d] that [the insured executive] received a 'profit or advantage' by diverting TransTexas corporate assets to his own use."  *National Union Fire Ins. Co. of Pittsburgh, PA v. U.S. Bank, Nat. Ass'n*, No. 4:07-cv-1958, 2008 WL 2405975, at *6 (S.D. Tex. June 11, 2008).

[13]  The Fifth Circuit has routinely held that public policy favors settlements.  *See Deleonardis v. U.S. Dep't of Health and Human Servs.*, 35 F.3d 559, at *1 (5th Cir. 1994) ("Settlement agreements are

alleging disgorgement, nor was the court presented with an express policy provision restoring coverage for the very damages at issue here.

In reaching its holding, the *TransTexas* court cited to the then 40-year old Dallas court of appeals decision in *Nortex*.  In that case, the bore holes of the policyholder's wells crossed the boundary lines of neighboring property owners allowing Nortex to acquire its neighbors' oil. *Nortex,* 456 S.W.2d at 490.  The court noted that these "material facts" were "undisputed."  *Id.* After being sued by the neighboring property owners for the resultant damages, Nortex sought coverage under a property damage liability policy (most likely a general liability policy) for defense costs and the ultimate settlement of the lawsuits.  In disallowing coverage, the court based its decision on the fact that the claim fell outside the policy's contractual language. Specifically, the court held that the "claims of Humble and Texaco were for conversion and unjust enrichment, and not claims for property damage within the meaning of the policy."  *Id.* at 493.  The court was not asked to make a public policy determination; rather, the issue presented on appeal was whether the "trial court correctly held that the claims of Humble and Texaco, the value of property taken and for unjust enrichment, were not claims for property damage within the meaning of the policy, [and] therefore were not covered by the policy."  *Id.*

The *Nortex* court did offer additional observations about restitution damages, but those comments were confined to "such a policy as we have here."  *Id.* at 494.  The court added that, when Nortex settled the lawsuits, it "did not sustain a 'loss' within the meaning of the insurance

---

favored by the courts and should be encouraged and upheld whenever possible."); *Bass v. Phoenix Seadrill/78, Ltd.,* 749 F.2d 1154, 1164 (5th Cir. 1985) ("[P]ublic policy favors voluntary settlements which obviate the need for expensive and time-consuming litigation."); *Ins. Concepts, Inc. v. Western Life Ins. Co.,* 639 F.2d 1108, 1111 (5th Cir. 1981) ("Without a doubt, public policy favors the settlement of claims brought before the courts. 'Settlement agreements have always been a favored means of resolving disputes …') (citations omitted); *Miller v. Republic Nat'l Life Ins. Co.,* 559 F.2d 426, 428 (5th Cir. 1977) ("Settlement agreements are 'highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'") (citation omitted).

contract; it was merely paying for oil it had removed and sold from the land of [the neighboring property owners]." *Id.* at 493-94.  That statement is entirely consistent with the court's "property damage" holding.  There is no indication from the court's comments that it intended to make a broad public policy pronouncement about disgorgement damages; to the contrary, it appears the court intended to limit its discussion to the "property damage" coverage in the policy before it. In any event, *Nortex* stands in stark contrast to (1) the Oceaneering Directors' proposed future settlement of *disputed* liability, and (2) a D&O policy expressly addressing disgorgement damages and unambiguously restoring coverage for payment of those damages in the absence of a final and nonappealable judgment.

The *O'Quinn* case is equally distinguishable.  In that case, an arbitration panel concluded that the law firm policyholder acted "improperly" by taking unauthorized deductions from clients' settlement distributions, and issued a final arbitration award requiring the law firm to return the improperly deducted fees.  *O'Quinn*, 33 F. Supp. 3d at 761-62.  As a result of this award, the district court held that the policyholder's forfeiture of money that "did not belong to it" was not a covered loss.  In the alternative, the court found that the policy's personal profit exclusion also precluded coverage, reasoning that the arbitration award "finding that the O'Quinn Firm's contingent fee contracts did not allow for the deduction of BI General Expenses and requiring them to return all BI General Expenses improperly deducted….is sufficient to satisfy the 'profit or advantage to which it was not legally entitled' exclusion." *Id.* at 774.

This holding is consistent with the *TransTexas* decision—a judgment requiring payment of disgorgement damages is excluded under the Personal Profit Exclusion and uninsurable under Texas law.  But that holding does not apply here.  In the context of a pre-judgment *settlement* that does not contain "findings" of an improper profit, neither Texas public policy nor Twin

City's Personal Profit Exclusion prohibit the Oceaneering Directors from recovering under their D&O insurance policy.

Thus, the cases that Twin City is most likely to rely upon to support its public policy position do not apply here, where (1) its policyholders will not admit to any wrongdoing, (2) no judicial body has found the Oceaneering Defendants liable of any wrongdoing, and (3) the Policy reinstates coverage for disgorgement damages unless a "final and nonappealable judgment" establishes that the Oceaneering Directors were "not legally entitled" to the remuneration they received.   To the extent that the consideration of public policy plays any role in this coverage dispute, it favors coverage for a settlement of the Derivative Action.

## VI.      CONCLUSION

Twin City's Declaratory Judgment Action is not supported by the Policy, Texas law or any established Texas public policy.   For the reasons set forth above, Oceaneering is entitled to judgment on the pleadings.

Respectfully submitted,

**REED SMITH LLP**

By: _/s/ J. James Cooper_

> J. James Cooper
> T.X. I.D. No. 04780010
> REED SMITH LLP
> 811 Main Street
> Suite 1700
> Houston, Texas 77002
> Telephone: 713.469.3800
> Facsimile: 713.469.3899
> jcooper@reedsmith.com
>
> *Attorney in Charge for Defendants*
> *Oceaneering International, Inc., John R. Huff,*
> *T. Jay Collins, Jerold J. Desroche, D. Michael*
> *Hughes, Harris J. Pappas, Paul B. Murphy,*
> *Jr., David S. Hooker, and M. Kevin McEvoy*

OF COUNSEL:

REED SMITH LLP
Caitlin R. Garber (*pro hac vice* granted)
Pa. I.D. No. 311321
cgarber@reedsmith.com
Kateri Tremblay (*pro hac vice* granted)
Pa. I.D. No. 320466
ktremblay@reedsmith.com