IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TWIN CITY FIRE INSURANCE CO. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| OCEANEERING INTERNATIONAL, | § | C.A. No. 4:16-cv-666 |
| INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendants Oceaneering International, Inc. ("Oceaneering"), John R. Huff, T. Jay Collins, Jerold J. DesRoche, D. Michael Hughes, Harris J. Pappas, Paul B. Murphy, Jr., David S. Hooker and M. Kevin McEvoy (collectively, the "Oceaneering Directors") (together with Oceaneering, the "Oceaneering Defendants") respond to Plaintiff's Motion for Summary Judgment.

Respectfully submitted,

**REED SMITH LLP**

*/s/ J. James Cooper*
J. James Cooper
T.X. I.D. No. 04780010
REED SMITH LLP
811 Main Street, Suite 1700
Houston, Texas 77002
Telephone: 713.469.3800
Facsimile: 713.469.3899
jcooper@reedsmith.com

*Lead Attorney for Defendants Oceaneering International, Inc., John R. Huff, T. Jay Collins, Jerold J. Desroche, D. Michael Hughes, Harris J. Pappas, Paul B. Murphy, Jr., David S. Hooker, and M. Kevin McEvoy*

OF COUNSEL:

**REED SMITH LLP**
Caitlin R. Garber (*pro hac vice* granted)
Pa. I.D. No. 311321
cgarber@reedsmith.com
Kateri Tremblay (*pro hac vice* granted)
Pa. I.D. No. 320466
ktremblay@reedsmith.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of July, 2016, a true and correct copy of the above Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment has been served on all counsel of record via the CM/ECF system.

*/s/ J. James Cooper*
J. James Cooper

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..............................................................................................1

II.     INCORPORATING THE OCEANEERING DEFENDANTS MOTION FOR
        JUDGMENT ON THE PLEADINGS AND SUPPORTING MEMORANDUM..............2

III.    DISPUTED FACTS............................................................................................2

IV.     ARGUMENT ...................................................................................................3

        A.      Controlling Precedent Requires Twin City, Not The Oceaneering
                Defendants, To Prove That Coverage Is Excluded..................................................3

        B.      Twin City Fails To Explain Why Texas Public Policy Bars Coverage For
                A Settlement Absent Findings Or Admissions Of Wrongdoing............................6

                1.      Twin City Does Not Offer A Compelling Response To Burks .................7

                2.      Texas Does Not Have A Well-Defined Public Policy Precluding
                        Coverage For The Settlement Of A Claim Seeking Disgorgement..........10

        C.      Twin City's Interpretation Of The "Uninsurable Provision" Virtually
                Eliminates Coverage For Shareholder Derivative Actions And Renders An
                Historically Significant Section Of The Policy Meaningless ...............................12

        D.      Twin City's Non-Texas Cases Do Not Negate Coverage For The
                Settlement Of Claims Seeking Disgorgement Damages ......................................15

                1.      Level 3 Is Unreliable Precedent..............................................................15

                2.      Twin City's Non-Texas Cases Do Not Support Its Public Policy
                        Argument................................................................................................17

        E.      *Allegations* Of Wrongful Conduct Establish Nothing ...........................................19

        F.      The Policy Specifically Covers Allegations Of Personal Profit Unless
                There Is A Final And Nonappealable Adjudication Of Misconduct ....................20

V.      CONCLUSION.................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Brown*,
   941 A.2d 1011 (Del. 2007) ...................................................................................19, 20

*Andover Newton Theological School, Inc. v. Continental Cas. Co.*,
   964 F.2d 1237 (1st Cir. 1992)................................................................................4

*Aon Corp. v. Certain Underwriters at Lloyd's of London*,
   No. 06-16852, 2010 WL 8510173 (Ill. Civ. Ct. Ch. Div. Dec. 3, 2010) ................18

*Balandran v. Safeco Ins. Co. of America*,
   972 S.W.2d 738 (Tex. 1998).................................................................................21

*Bank of the West v. Super. Ct.*,
   833 P.2d 545 (Cal. 1992) .....................................................................................18

*Big 5 Corporation v. Gulf Underwriters Insurance Company*,
   No. CV 02-3320WJR(SHX), 2003 WL 22127029 (C.D. Cal. July 14, 2003) .......18

*Burks v. XL Specialty Ins. Co.*,
   No. 14-14-00740-CV, 2015 WL 6949610 (Tex. App.—Houston [14th Dist.]
   Nov. 10, 2015, no writ)................................................................................. *passim*

*Carter–Wallace, Inc. v. Admiral Ins. Co.*,
   712 A.2d 1116 (N.J. 1998)....................................................................................5

*Cent. Dauphin Sch. Dist. v. Am. Cas. Co.*,
   426 A.2d 94 (Pa. 1981) ........................................................................................17

*Cohen v. Lovitt & Touche, Inc.*,
   308 P.3d 1196 (Ariz. Ct. App. 2013)....................................................................16

*Cox Operating, L.L.C. v. St. Paul Surplus Lines Ins. Co.*,
   795 F.3d 496 (5th Cir. 2015) .................................................................................4

*Daily Income Fund v. Fox*,
   464 U.S. 523 (1984)......................................................................................... 12-13

*Fidelity Bank v. Chartis Specialty Ins. Co.*,
   No. 1:12-CV-4259-RWS, 2013 WL 4039414 (N.D. Ga. Aug. 7, 2013) ................18

*Gallup, Inc. v. Greenwich Ins. Co.*,
   No. CV N14C-02-136FWW, 2015 WL 1201518 (Del. Super. Feb. 25, 2015).............9, 15, 19

*Gastar Exploration Ltd. v. U.S. Specialty Ins. Co.*,
  No. 14-12-00118-CV, 2013 WL 3693603 (Tex. App.—Houston [14th Dist.]
  July 16, 2013, no pet.)..................................................................................................5

*Genzyme Corp. v. Federal Ins. Co.*,
  622 F.3d 62 (1st Cir. 2010)..........................................................................................6

*Greene v. Farmers Ins. Exchange*,
  446 S.W.3d 761 (Tex. 2014).........................................................................................5

*Hurst v. American Racing Equipment, Inc.*,
  981 S.W.2d 458 (Tex. App.—Texarkana 1998, no pet.)...........................................19

*Ill. Union Ins. Co. v. Midwood Lumber & Millwork, Inc.*,
  No. 13-CV-2466 ARR JO, 2014 WL 639420 (E.D.N.Y. Feb. 18, 2014).................5

*J.P. Morgan Securities Inc. v. Vigilant Ins. Co.*,
  992 N.E.2d 1076 (N.Y. 2013).....................................................................................17

*John M. O'Quinn P.C. v. National Union Fire Ins. Co.*,
  33 F. Supp. 3d at 766 (S.D. Tex. 2014) ....................................................................13

*Kramer v. W. Pac. Indus. Inc.*,
  546 A.2d 348 (Del. 1988) .......................................................................................1, 11

*La Union Del Pueblo Entero v. FEMA*,
  608 F.3d 217 (5th Cir. 2010) .....................................................................................16

*Landry v. State of Ala.*,
  579 F. 2d 353 (5th Cir. 1978) ....................................................................................16

*Lawrence v. CDB Serv., Inc.*,
  44 S.W.3d 544 (Tex. 2001)...........................................................................................6

*Level 3 Communications, Inc. v. Federal Ins. Co.*,
  272 F.3d 908 (7th Cir. 2001) ................................................................................15, 16

*Mountainside Holdings, LLC v. American Dynasty Surplus Lines Ins. Co.*,
  No. 2003-127, 2014 WL 3055881 (Pa. Com. Pl. June 30, 2014)............................18

*Munich Reinsurance Am., Inc. v. Tower Ins. Co. of New York*,
  2012 WL 2917576 (D.N.J. July 17, 2012)..................................................................5

*Mustang Tractor & Equipment Co. v. Liberty Mut. Ins. Co.*,
  No. H-91-2523, 1993 WL 566032 (S.D. Tex. Oct. 8, 1993) ...................................11

*O'Connor v. Proprietors Ins. Co.*,
  696 P.2d 282 (Colo. 1985)..........................................................................................13

*Pendergest-Holt v. Certain Underwriters at Lloyd's of London*,
　　600 F.3d 562 (5th Cir. 2010) ...........................................................14

*In re Poly-America, L.P.*,
　　262 S.W.3d 337 (Tex. 2008)..............................................................5

*Republic Western Ins. Co. v. Spierer, Woodward, Willens, Denis and Furstman*,
　　68 F.3d 347 (9th Cir. 1995) .............................................................17

*Southcentral Employment Corp. v. Birmingham Fire Ins. Co. of Pennsylvania*,
　　926 A.2d 977 (Pa. Super. Ct. 2007)..................................................17

*Tamimi Global Co. Ldt. v. Kellogg Brown & Root LLC*,
　　No. H-11-0585, 2011 WL 1157634 (S.D. Tex. Mar. 24, 2011) ...............5

*Texas Farmers Ins. Co. v. Murphy*,
　　996 S.W.2d 873 (Tex. 1999)..............................................................6

*In re TransTexas Gas Corp.*,
　　597 F.3d 298 (5th Cir. 2010) .......................................................7, 11

*Trinity Universal Ins. Co. v. Cowan*,
　　945 S.W.2d 819 (Tex. 1997)............................................................13

*Trosclair v. Chevron U.S.A., Inc.*,
　　161 F. Supp. 2d 739 (S.D. Tex. 2001) ..............................................19

*U.S. Bank Nat. Ass'n v. Indian Harbor Ins.*,
　　68 F. Supp. 3d 1044 (D. Minn. 2014).................................................15

*U.S. Bank Nat'l Ass'n v. Indian Harbor Ins. Co.*,
　　2014 WL 3012969 (D. Minn. July 3, 2014) .........................................9

*U.S. Fid. & Guar. Co v. Fendi Adele S.R.L.*,
　　-- F.3d --, 2016 WL 2865578 (2d Cir. May 17, 2016)..........................17

*Vigilant Ins. Co. v. Credit Suisse First Boston Corp.*,
　　782 N.Y.S.2d 19 (1st Dep't 2004) ....................................................17

*Virginia Mason Medical Center v. Exec. Risk Indem. Inc.*,
　　No. C07-0636MJP, 2007 WL 3473683 (W.D. Wash. Nov. 14, 2007)......19

*W.R. Grace & Co. v. Local Union 759, Intern. Union of Rubber Workers*,
　　461 U.S. 757 (1983)..........................................................................6

*William Beaumont Hosp. v. Fed. Ins. Co.*,
　　2013 WL 992552 (E.D. Mich. Mar. 13, 2013) ....................................13

**Other Authorities**

Gillian McPhee, 1 CORPORATE GOVERNANCE: LAW AND PRACTICE §
    5.04 (Amy L. Goodman and Steven M. Haas eds., 2013) ........................................................14

Hartford Financial Services Group Website,
    https://www.thehartford.com/commercial-insurance-agents/coverages-
    directors-officers ................................................................................................................13

International Risk Management Institute, *Corporate D&O Liability Coverage
    Analysis – Exclusions*................................................................................................................14

Merriam-Webster Online Dictionary,
    http://www.merriamwebster.com/dictionary/remuneration........................................................1

William E. Knepper et al., 2-25 LIABILITY OF CORPORATE OFFICERS AND
    DIRECTORS § 25.10, 1 (Matthew Bender ed., 8th ed. 2013) ...............................................13

## I.      INTRODUCTION

As expected, Twin City glosses over the most glaring problem with its argument:  how can it justify charging the Oceaneering Defendants a premium for a policy that expressly covers shareholder derivative actions[1] and settlements of claims for return of compensation,[2] and then credibly ask this Court to write those provisions out of the insurance contract through a catch-all public policy exclusion in the definition of "Damages."  It can't.  Twin City's position cannot be reconciled with the express language in its policy, established rules of contract interpretation, Texas public policy favoring settlements and the sanctity of contractual obligations, and no guidance from the Texas Supreme Court or the Texas Legislature that insuring a settlement of a claim seeking disgorgement is against public policy or otherwise generally 'uninsurable under the law' of Texas.

Importantly, the Texas cases relied upon by Twin City do not weigh an "uninsurable under the law" limitation to coverage against enhancements to coverage like those provided in Twin City's policy (*i.e.*, coverage for shareholder derivative actions and restoration of coverage for settlements of disgorgement allegations).  Nor do any of those cases provide the necessary underpinning for Twin City's position—that there is, in fact, a Texas public policy against insuring the settlement of claims seeking disgorgement.  And that's not just the Oceaneering Defendant's understanding of Texas law.  A panel of three Texas appellate judges recently addressed those same cases and reached the same conclusion.  *See Burks v. XL Specialty Ins.*

---

[1] The very nature of a shareholder derivative action is that any damages recovered inure directly to the corporation.  *See Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 351 (Del. 1988) ("any damages recovered in [derivative] suit are paid to the corporation").  *See also* Policy at §§ II(F); V(C)(2).

[2] The Hartford Policy uses the term "remuneration" in the Personal Profits exclusion which means compensation received for services or employment.  *See* Merriam-Webster Online Dictionary, http://www.merriamwebster.com/dictionary/remuneration ("an amount of money paid to someone for the work that person has done.").  *See also* Policy at § Endorsement No. 10 at § VI(D)(1).

*Co.*, No. 14-14-00740-CV, 2015 WL 6949610, at *9 (Tex. App.—Houston [14th Dist.] Nov. 10, 2015, no writ) (". . . no Texas court has held that insuring a settlement of a claim seeking restitution or disgorgement is against public policy or otherwise generally 'uninsurable under the law' of Texas; nor has the Legislature enacted any legislation on point.").   Nor has Twin City's argument fared well in other courts around the country.   Save for Judge Posner's opinion in *Level 3*, the vast majority of courts have rejected the same public policy arguments advanced by Twin City here.

For these reasons, the Oceaneering Defendants respectfully request that Twin City's Motion be denied in its entirety.

## II.    INCORPORATING THE OCEANEERING DEFENDANTS MOTION FOR JUDGMENT ON THE PLEADINGS AND SUPPORTING MEMORANDUM

The issues addressed in Twin City's motion for summary judgment were the subject of cross-motions for judgment as a matter of law filed by the parties on June 8, 2016.   Therefore, to the extent possible, the Oceaneering Defendants will not repeat here arguments that were already addressed in their opening brief.   *See* Dkt No. 26.   The Oceaneering Defendants incorporate their Motion For Judgment On The Pleadings and Supporting Memorandum (hereinafter referred to as the "Opening Brief" and cited as "Def. Br.") into this Response to Twin City's motion for summary judgment.   All defined terms in the Opening Brief have the same meaning in this Response.

## III.    DISPUTED FACTS

Twin City devotes 15 pages of its opening brief to a discussion of the factual background of this case.   In large part, Twin City attempts to give this Court the impression that the claims in the underlying Derivative Action have merit.   They do not.   The Oceaneering Directors have disputed, and continue to dispute, all of the allegations asserted against them in the Derivative

Action.[3]  *See* Oceaneering Directors' Motion to Dismiss filed on September 5, 2014 in the

Derivative Action (attached as Exhibit A).  Notwithstanding this general misimpression, here are

just a few "factual" allegations made by Twin City that do not accurately reflect the record:

- Twin City claims that "the Non-Employee Directors offered, in the counter-offer, to return some portion of their compensation in order to settle any and all claims of liability against them."  Pl. Br. at p. 15.  That is not the case.  Instead, the Oceaneering Directors' counter-offer noted the numerous factual and methodological errors in the Plaintiff's demand and proffered an amount certain to resolve all claims of liability and alleged breaches of fiduciary duty without admitting liability and without any reference to any compensation received.  *See* Twin City's Sealed Exhibit B-3 at OII_0000011.

- Twin City inflates the average total compensation received by the Non-Employee Directors by performing its own math and inappropriately averaging the non-employee directors compensation from 2011-2013 with the Chairman of the Board (Huff) compensation that was awarded under the ex-CEO's service agreement with the company.  *Compare* Pl. Br. at p. 6 (claiming "the average total compensation received by the Non-Employee Directors was $1,161,655.80 in 2011, $908,956.83 in 2012 and $1,099,960.50 in 2013") *with* Derivative Action Complaint at ¶ 30 (alleging average compensation was $754,932 in 2011, $549,386 in 2012, and $603,067 in 2013).

- Twin City cites Oceaneering's most recent proxy that identifies the Oceaneering Directors' compensation for 2015 and then states, without citation, that "all but one of the Directors is now much closer to the Peer Group."  Pl. Br. at p. 8.  Nothing in the April 8, 2016 Proxy Statement for Oceaneering identifies the compensation of non-employee directors at Oceaneering's Peer Group.

## IV.   ARGUMENT

### A.   Controlling Precedent Requires Twin City, Not The Oceaneering Defendants, To Prove That Coverage Is Excluded

Twin City places the burden of proof in this case on the wrong shoulders.  In Texas, an

insurer has the burden of proof on any *exception* to coverage, and the location of that exception

---

[3]  The fact that the Oceaneering Directors do not choose to address each and every allegation made in the Derivative Action in this coverage case should not be construed as a waiver or admission of liability.

does not move the burden back to the insured.[4]

Here, the definition of "Damages" begins with a broad grant of coverage:

> (C) "**Damages**" means amounts, other than Defense Costs, which the Insured Persons or, with respect to Insuring Agreement (C), the Entity, are legally obligated to pay solely as a result of any Claim insured by this Policy, including:
>
>> (1)  settlements, judgments, and costs awarded pursuant to judgments and appeals; . . .

That broad definition is then followed by a "taking away" of coverage for certain categories of damages:

> **Damages** shall not include:
>
> . . .
>
>> (4)  amounts for matters uninsurable pursuant to applicable law; . . .

*See* Policy at § II(C).  There can be no doubt that the Uninsurable Provision constitutes an exclusion from coverage, such that Twin City bears the burden of proving its application.

Texas law also makes clear that the location of the exclusion is immaterial; that the elimination of certain types of "Damages" situated within the "Definitions" section of the Policy rather than within the "Exclusions" section does not alter Twin City's burden of proof.  *See Cox Operating, L.L.C. v. St. Paul Surplus Lines Ins. Co.*, 795 F.3d 496, 501-02 (5th Cir. 2015) (noting that courts should not focus on a provision's "location in the policy").[5]  As such, the

---

[4] Article 554.002 of the Texas Insurance Code provides that the insurer "has the burden of proof as to any avoidance or affirmative defense" and that "[l]anguage of exclusion in the contract or an exception to coverage claimed by the insurer or health maintenance organization constitutes an avoidance or an affirmative defense."

[5] *See also Andover Newton Theological School, Inc. v. Continental Cas. Co.*, 964 F.2d 1237, 1243 (1st Cir. 1992) (noting "[i]f an insurer were able to distribute provisions limiting liability throughout a policy, with the expectation that its shouldering of the burden of proof would be limited to the single section entitled, 'Exclusions,' this would create considerable incentive to obfuscation and subterfuge"); *Ill. Union*

burden rests on Twin City to demonstrate applicability of the Uninsurable Provision.  *See Gastar Exploration Ltd. v. U.S. Specialty Ins. Co.*, 412 S.W. 3d 577, 583-84 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (holding that any language that reduces the scope of coverage is limiting language that should be treated as an exclusion); *Greene v. Farmers Ins. Exchange*, 446 S.W.3d 761, 766 (Tex. 2014) (noting that if a clause were to limit liability or carve out a particular type of loss, that clause would function as an exclusion).

Furthermore, as previously noted in the Oceaneering Defendants' Opening Brief, because Twin City bases its argument on public policy, it must shoulder the burden of proving that public policy invalidates coverage for any settlement.  Def. Br. at p. 9.  *See also Tamimi Global Co. Ltd. v. Kellogg Brown & Root LLC*, No. H-11-0585, 2011 WL 1157634, at *3 (S.D. Tex. Mar. 24, 2011) (noting that a party must satisfy "its burden to show that public policy considerations should cause this Court to refuse to enforce [an] otherwise valid [agreement]"); *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (noting that under Texas law, the burden of proving that a contract is void under public policy falls on the party opposing the contract).

In contrast, the Oceaneering Defendants simply bear the burden of showing that the Derivative Action Claim triggers coverage and that any settlement would fall within the general definition of Damages—both of which they have accomplished here.  *See* Pl. Br. at p. 13 (acknowledging that "coverage for this matter is triggered under [the] Insuring Agreements"); Policy at § II(C) (defining Damages to include "settlements").

---

*Ins. Co. v. Midwood Lumber & Millwork, Inc.*, No. 13-CV-2466 ARR JO, 2014 WL 639420, at *10 (E.D.N.Y. Feb. 18, 2014) ("[I]t is the effect of a provision rather than its denomination that prevails for purposes of determining whether it is an exclusion); *Carter–Wallace, Inc. v. Admiral Ins. Co.*, 712 A.2d 1116, 1126–27 (N.J. 1998) (stating that "[e]xclusions do not shed their essential character when they are moved from one section of a policy and are crafted as part of that policy's grant of coverage"); *Munich Reinsurance Am., Inc. v. Tower Ins. Co. of New York*, No. 09-cv-2598, 2012 WL 2917576, at *4 (D.N.J. July 17, 2012) ("where the language behaves like an exclusion of the coverage grant by the very operation of its terms, the insurer should bear the burden of proving the phrase's application").

**B.      Twin City Fails To Explain Why Texas Public Policy Bars Coverage For A Settlement Absent Findings Or Admissions Of Wrongdoing**

The Oceaneering Defendants explain in their Opening Brief why the very limited public policy exception precluding insurance coverage for disgorgement damages does not apply in this case: namely, there have been no findings or admissions that the Oceaneering Directors engaged in any wrongdoing or obtained remuneration for which they are not legally entitled.  All that is present here are disputed *allegations*.  Twin City has failed to explain why public policy bars coverage for a settlement under those circumstances.

An insurer may refuse to pay an otherwise covered claim based on "public policy" consideration only if such public policy is "well defined and dominant" and easily ascertained by reference to statutes and legal precedents.  *W.R. Grace & Co. v. Local Union 759, Intern. Union of Rubber Workers*, 461 U.S. 757, 766 (1983) (citing *Muschany v. United States*, 324 U.S. 49, 66 (1945)).   In addition, an insurer cannot resort to "amorphous public policy limitations on insurance policies" in an effort to evade coverage otherwise contemplated by its policy. *Genzyme Corp. v. Federal Ins. Co.*, 622 F.3d 62, 69 (1st Cir. 2010).  *See, e.g.*, *Lawrence v. CDB Serv., Inc.,* 44 S.W.3d 544, 553 (Tex. 2001) ("Public policy … is a term of vague and uncertain meaning" and "[c]ourts must exercise judicial restraint in deciding whether to hold arm's length contracts void on public policy grounds"); *Texas Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 878 (Tex. 1999) (rejecting insurer's general public policy defense to fulfilling its coverage obligation and noting that the insurer "focus[ed] on conflicting public policy considerations without first evaluating the contract language").

Twin City points to "leading" insurance treatises to support the premise that "it is a black-letter concept of insurance law that insurance does not include the restoration of *an ill-gotten gain*."  Pl. Br. at p. 22 (quotations and citations omitted) (emphasis added).  Although

those "leading" treatises do not suggest that the mere allegations of wrongdoing, and the settlement of those disputed allegations, raise the same concerns, Twin City nonetheless makes that leap.  A few pages later in its brief, Twin City claims (without supporting Texas case law) that "no wrongdoing need be established" and "whether there is any wrongdoing by the insured is entirely irrelevant to the issue of whether the remedy is uninsurable disgorgement."  *Id*. at pp. 25-26.  Texas case law does not support this position.  *Compare Burks v. XL Specialty Ins. Co.*, No. 14-14-00740-CV, 2015 WL 6949610, at *9 (Tex. App.—Houston [14th Dist.] Nov. 10, 2015, no writ) (*settlement* of a claim for disgorgement damages is not uninsurable under Texas law), *with In re TransTexas Gas Corp.*, 597 F.3d 298 (5th Cir. 2010) (*judgment* ordering payment of disgorgement damages not a covered loss).

### 1.     Twin City Does Not Offer A Compelling Response To *Burks*

Twin City has failed to explain why *Burks* does not control the outcome of this case. Indeed, Twin City appears to follow some aspects of the *Burks* opinion (by acknowledging its duty to advance defense costs for the Derivative Action) but ignoring others (in refusing to provide indemnity for any settlement of the Derivative Action).[6]

The inconsistencies in Twin City's argument are apparent from the start.  Twin City claims that "all *Burks* really held" was "that the payment of defense expenses was not disgorgement."  Pl. Br. at p. 27 n.12.  Twin City then later asserts that the *Burks* "court did not reach any definitive holding."  *Id*. at p. 28.  Indeed, by reading Twin City's description of *Burks*, one would have no idea that there are two distinct sections of the court's opinion—one

---

[6]     Stated otherwise, Twin City concedes that defense costs are covered damages based upon the allegations alleged in the underlying complaint, but makes a distinction for indemnity payments for those same allegations.  *See* Pl. Br. at p. 14 ("while the cost of defending an action may be covered based on the allegations of the complaint, that does not mean the costs of resolving that action (in whole or part) will necessarily be within the coverage").  Such a distinction is unsound.

addressing advancement of defense costs and the other discussing indemnification of a settlement.

Because Twin City has not accurately described the court's holdings, an in-depth review of the court's opinion is required.   In *Burks*, the plan agent for a company in a Chapter 11 bankruptcy proceeding filed suit against the company's CFO, Burks, for return of certain payments.[7]   Burks sought coverage for that suit under a directors and officers insurance policy issued by XL Specialty Insurance Company.   After XL denied Burks' request for coverage, Burks settled with the plan agent and filed suit against XL.

XL filed a motion for summary judgment on two grounds relevant to Twin City's argument.  XL first claimed it had no duty to advance defense expenses "because there was no possibility of coverage for the plan agent's claim, which sought disgorgement and was therefore not covered by the policy's definition of 'loss.'"  *Burks*, 2015 WL 6949610, at *1.  Additionally, XL argued that it had no duty to indemnify Burks on the grounds that disgorgement was not covered by its policy.  The Fourteenth Court of Appeals addressed each of those arguments in turn.

The court first addressed XL's defense costs argument.  According to XL, there was no possibility of coverage for the plan agent's claims, and therefore no duty to advance defense costs, because disgorgement of ill-gotten gains are uninsurable under Texas law.  *Id.*  The court rejected this argument, holding that XL failed to establish as a matter of law that it owed no duty to advance defense expenses *even if* the plan agent's requested remedy of disgorgement was not insurable.  *Id.* at *8.  Here the court observed that neither party had "cited any Texas authority holding that insurance for disgorgement is against public policy" but that Burks had "conceded"

---

[7] The company had transferred certain non-base salary compensation, salary compensation and stock to Burks.

before both the trial and appellate courts that "disgorgement for ill-gotten gains generally is 'uninsurable under the law' of Texas." *Id*. at *6 n.5. Based on this concession, the court went on to state that "[g]iven the strong policy in Texas favoring the right of parties to contract and the lack of any Texas authority holding that insuring against disgorgement is against public policy, we render no opinion on the matter. We assume without deciding that disgorgement is 'uninsurable' in Texas." *Id*. This footnote appears only in the court's opinion on XL's duty to advance defense costs and clearly confirms that, contrary to Twin City's position, neither the court nor the parties identified any authority holding that insurance for disgorgement is against public policy.

The court found additional support for its holding in the language of the XL policy. It noted that "under the unambiguous terms of the policy [the Personal Profit exclusion], XL agreed to advance defense expenses until it is 'finally determined' the loss is not covered." *Id*. at *7. Based on this express restoration of coverage in the policy, XL could not refuse to advance defense costs based solely on the "uninsurable under the law" provision in the definition of "loss." *Id*. at *8.

The *Burks* opinion does not stop there. The court proceeded to discuss XL's duty to indemnify Burks for the settlement *even* if payment could be attributable to uninsurable disgorgement. Citing *In re TransTexas* for the proposition that a "*judgment* ordering the repayment of a fraudulent transfer under the Bankruptcy Code may indicate that an insured has paid restitution or disgorgement" (emphasis in the original), the court observed that "the mere fact of settlement does not indicate admission of the allegations in a complaint."[8] *Burks,* 2015

---

[8] The *Burks* court cited favorably to the opinion in *U.S. Bank Nat'l Ass'n v. Indian Harbor Ins. Co.*, No. 12-cv-3175, 2014 WL 3012969 (D. Minn. July 3, 2014). Twin City describes the *U.S. Bank* opinion as "much criticized" (Pl. Br. at p. 28 n.13); however, only two opinions have cited the *U.S. Bank* decision and both agreed with its holding. *See Burks*, 2015 WL 6949610, at *9; *Gallup, Inc. v. Greenwich Ins.*

WL 6949610, at *8.  Further, the court indicated that it would "not automatically presume that the settlement constitutes restitution because it resolved claims alleging ill-gotten gains and seeking disgorgement of those gains."  *Id*.[9]

Finally, the *Burks* court distinguished the "only Texas authority" relied on by XL—the *Nortex* decision—as addressing a "vastly different" policy and facts and "not persuasive when interpreting the policy" at issue.  *Id*. at *9.

### 2. Texas Does Not Have A Well-Defined Public Policy Precluding Coverage For The Settlement Of A Claim Seeking Disgorgement

For Twin City to establish that Texas public policy invalidates coverage for any settlement of the Derivative Action, it must show that the Texas legislature or courts have formulated such a public policy.  It fails to make this showing.  Instead, Twin City primarily relies on an out-of-state decision (*Level 3*) and three Texas cases (*In re TransTexas*, *O'Quinn*, and *Nortex*) in making its argument, but those cases *do not* establish clear Texas public policy prohibiting insurance coverage for the settlement of disgorgement allegations.  The Oceaneering Defendants address and distinguish all three of the Texas cases in its Opening Brief.  *See* Def. Br. at pp. 19-23.

In its motion, Twin City misleadingly splices a discussion of the out-of-state *Level 3* case with its synopsis of *In re TransTexas*, presumably to suggest that the Fifth Circuit found that settlements of disgorgement claims are uninsurable as a matter of public policy.  It did not.  To the extent that the *TransTexas* panel made any determination about Texas public policy, its

---

*Co.*, No. CV N14C-02-136FWW, 2015 WL 1201518, at *10 (Del. Super. Feb. 25, 2015), *reargument denied*, No. CV N14C-02-136FWW, 2015 WL 1331524 (Del. Super. Mar. 20, 2015).

[9] Although the actual settlement agreement was not in the record, the court noted that there was no admission of wrongdoing in the stipulation of dismissal and that Burks had maintained that he was legally entitled to the compensation owed to him under the agreements with his employer.  *Id.*

decision was predicated on a prior bankruptcy court judgment finding that the insured had engaged in fraudulent activities.  *In re TransTexas Gas Corp.*, 597 F.3d at 303.

Twin City also cites to *Mustang Tractor & Equipment Co. v. Liberty Mut. Ins. Co.*, No. H-91-2523, 1993 WL 566032 (S.D. Tex. Oct. 8, 1993), *aff'd*, 76 F.3d 89 (5th Cir. 1996), in its public policy section, but fails to provide any discussion of how this case is relevant to the issues before this Court.  Pl. Br. at p. 23.  This omission is revealing.  The *Mustang Tractor* opinion never discussed any public policy issues, let alone any purported public policy prohibiting insurance for allegations of disgorgement in a shareholder derivative action.  Instead, in the context of analyzing a general liability policy that did not define "damages," the court found that equitable claims for rescission and restitution did not qualify as "damages" under the policy at issue.  In reaching its conclusion, the court relied upon the very canons of construction the Oceaneering Defendants urge this Court to employ here.  *See Mustang Tractor*, 1993 WL 566032, at *8 (". . . insurance policies are to be construed so that none of the policy's terms are rendered meaningless."); Def. Br. at pp. 12-15.

Unlike the policy in *Mustang Tractor*, Twin City's Policy clearly provides coverage for the settlement of claims that may be considered restitutionary in nature.  *See* Policy at §§ I(A); II(C) (defining "Damages" to include "settlements"); II(F) (defining "Derivative Actions" to mean "any civil proceeding against an Insured Person for a Wrongful Act of such Insured Person made on behalf of, or in the name or in the right of, an Entity by a securities holder of such Entity in his or her capacity as such").  *See also Kramer*, 546 A.2d at 351 (purpose of shareholder derivative action against directors is to seek restitution from the directors and provide payment to the insured company).  Because *Mustang Tractor* does not address, let alone

- 11 -

clearly establish, a public policy prohibiting insurance coverage for allegations of disgorgement, it cannot save Twin City's public policy argument.

### C. Twin City's Interpretation Of The "Uninsurable Provision" Virtually Eliminates Coverage For Shareholder Derivative Actions And Renders An Historically Significant Section Of The Policy Meaningless

Apart from its failed effort to establish a clear public policy against insuring a settlement of claims seeking disgorgement damages, Twin City's interpretation of its Uninsurable Provision would create illusory coverage for shareholder derivative actions and nullify bargain-for provisions in the Policy. Interpreting an insurance policy in that manner would violate established rules of Texas contract law.

As previously stated, the Oceaneering Policy expressly covers shareholder derivative claims alleged against the Oceaneering Directors. *See* Policy at §§ II(F) (defining "Derivative Actions" to mean "any civil proceeding against an Insured Person for a Wrongful Act of such Insured Person made on behalf of, or in the name or in the right of, an Entity by a securities holder of such Entity in his or her capacity as such"); V(C)(2) (restoring coverage for a "Claim" brought or maintained by or on behalf of Oceaneering if a "Derivative Action" is brought or maintained without the solicitation, assistance, or active participation of any Director and/or Officer). Settlements of the damages typically sought in those actions are also expressly preserved in the Policy. *Id*. at § Endorsement No. 10 at § VI(D)(1). That coverage was provided to the Oceaneering Directors in consideration for the payment of premium to Twin City. *See* Preamble to the Policy, p. 1 of 13 ("In consideration of, and subject to, the payment of the premium, the Insurer and the Insureds agree as follows:").

If, as Twin City contends, Texas public policy prohibits insurance coverage for claims seeking the payment of disgorgement damages from an insured director to the insured company, then coverage for shareholder derivative actions would be rendered virtually illusory. *See Daily*

*Income Fund v. Fox*, 464 U.S. 523, 528 (1984) (describing a derivative action as an "equitable device" that allows a stockholder "to step into the corporation's shoes and to seek in its right the restitution he could not demand on his own").   As The Hartford Financial Services Group concedes on its own website, "[c]ourts are overflowing with shareholders making damaging claims against directors and officers."[10]   This Court should not adopt an interpretation of the Policy that would "render insurance coverage illusory for many of the things for which insureds commonly purchase insurance."   *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 828 (Tex. 1997).   *See also O'Connor v. Proprietors Ins. Co.,* 696 P.2d 282, 285 (Colo. 1985) (in describing an illusory policy provision, the court stated that "such a clause would in effect allow the insurer to receive premiums when realistically it is not incurring any risk of liability."); *William Beaumont Hosp. v. Fed. Ins. Co.*, 2013 WL 992552, at *11 (E.D. Mich. Mar. 13, 2013), *aff'd*, 552 F. App'x 494 (6th Cir. 2014) ("This illusory sleight-of-hand view of policy 'coverage,' with one clause taking away what another promises to provide, is truly a position that only an insurer (and its lawyer) could embrace.").

Twin City also ignores the historical importance of the "final adjudication" language in the Personal Profit exclusion, and the additional consideration paid for that coverage. Historically, the personal profit exclusion was triggered by mere allegations of unlawful gain, whether those allegations were substantiated or not.[11]   These broad exclusions were not commercially attractive to policyholders.   Accordingly, the insurance industry designed and

---

[10]   See   https://www.thehartford.com/commercial-insurance-agents/coverages-directors-officers ("Public Companies" tab).   Twin City Fire Insurance Company is a subsidiary of Hartford Fire Insurance Company.

[11] *See, e.g.*, *John M. O'Quinn P.C. v. National Union Fire Ins. Co.*, 33 F. Supp. 3d 756, 766 (S.D. Tex. 2014); William E. Knepper et al., 2-25 LIABILITY OF CORPORATE OFFICERS AND DIRECTORS § 25.10, 1 (Matthew Bender ed., 8th ed. 2013) ("Historically, [ill-gotten gains exclusions] did not require a final adjudication in the underlying D&O litigation").

- 13 -

marketed a new version of the provision (with higher premiums), under which claims involving unlawful gains could only be excluded where there was a showing that a policyholder had "in fact" received that financial advantage.  *See e.g.*, *Pendergest-Holt v. Certain Underwriters at Lloyd's of London*, 600 F.3d 562, 567 (5th Cir. 2010).  However, "in fact" exclusions still included a great deal of uncertainty, since a finding that a policyholder did "in fact" receive ill-gotten gains merely required a showing of something more than sheer allegations of those gains. *Id.* at 573 ("In bargaining for 'in fact' language, then, the insurer reserves the right to litigate the coverage question outside of the underlying action for which insurance coverage is sought.").

This uncertainty led to the creation of "final adjudication" exclusions, which were marketed and sold as an exclusion that would only apply if an alleged unlawful gain was proven in a "final adjudication" in the underlying action.[12]  Policyholders and insurers alike (including Twin City) have treated this "final adjudication" language as an enhancement that provides certainty and precludes insurers from denying coverage for anything less than a final adjudication of wrongdoing by the insured.  *See* International Risk Management Institute, *Corporate D&O Liability Coverage Analysis – Exclusions* ("'final adjudication' wording is more favorable to the insured, compared to 'in fact' wording . . . 'in fact' wording is rarely found in D&O policies that have been issued within the past 10 years"); Def. Br. at p. 11.

Twin City invites this Court to adopt an interpretation of the "Uninsurable Provision" that virtually eliminates coverage for shareholder derivative actions, an important protection for which Oceaneering paid its premium, and renders an historically significant section of the policy meaningless.  This Court should decline that invitation.

---

[12] *See* Gillian McPhee, 1 CORPORATE GOVERNANCE: LAW AND PRACTICE § 5.04 (Amy L. Goodman and Steven M. Haas eds., 2013) ("This [final adjudication] language is designed to prevent an insurer from litigating the existence of an insured's fraudulent or criminal act in a separate coverage action and attempting to establish, regardless of the outcome in the underlying litigation, that the insured's misconduct precludes coverage under the policy . . .").

### D.     Twin City's Non-Texas Cases Do Not Negate Coverage For The Settlement Of Claims Seeking Disgorgement Damages

With nothing in the actual insurance contract to support its denial of coverage, Twin City resorts to inapplicable, non-Texas cases to support its position that "the return of money is a restitutionary remedy and cannot be an insurable loss."  Pl. Br. at p. 23.  However, these cases are distinguishable on at least three separate bases:  (1) none of the cases included enhancements requiring a "final and nonappealable adjudication" in the underlying action like the Twin City Policy does here; (2) those cases did not apply the cannons of contract construction required under Texas law; and (3) the majority of cases cited by Twin City had established – by court order, admission or otherwise – that the policyholder obtained ill-gotten gains.

### 1.     *Level 3* Is Unreliable Precedent

Twin City's "uninsurability" argument relies heavily on *Level 3 Communications, Inc. v. Federal Ins. Co.*, 272 F.3d 908 (7th Cir. 2001), and its progeny.  Twin City asks this Court to extend the reasoning in those cases to the very different facts presented here.  However, the recent trend in cases where insurers proffer a "disgorgement" defense based on vague public policy grounds is to limit the reach of that defense rather than expand it.  Indeed, numerous jurisdictions have expressly declined to adopt the reasoning espoused in *Level 3*.  *See, e.g.*, *Burks*, 2015 WL 6949610, at *10;[13] *Gallup, Inc. v. Greenwich Ins. Co.*, No. CV N14C-02-136FWW, 2015 WL 1201518, at *8 (Del. Super. Feb. 25, 2015), *reargument denied*, No. CV N14C-02-136FWW, 2015 WL 1331524 (Del. Super. Mar. 20, 2015); *U.S. Bank Nat. Ass'n v. Indian Harbor Ins. Co.*, 68 F. Supp. 3d 1044, 1053 (D. Minn. 2014), *appeal dismissed*, No. 15-

---

[13] Once again Twin City misconstrues the *Burks* opinion, claiming that *Burks* did not reject *Level 3*.  This is plainly not the case.  *Id*. at *10 (noting that "the sweeping *Level 3* decision has never been cited as authority by a Texas court" and declining to follow *Level 3* where settlement contained no admission of wrongdoing and insured maintained that he was legally entitled to compensation).

1691 (8th Cir. Mar. 22, 2016); *Cohen v. Lovitt & Touche, Inc.*, 308 P.3d 1196, 1200 (Ariz. Ct. App. 2013).

This should come as no surprise given the controversial underpinnings of the *Level 3* decision. *Level 3*'s primary shortcoming is that it rests on an inappropriate finding of fact by an appellate court that a large settlement in a securities suit represented the disgorgement of profit obtained through fraud. This finding was made by Judge Posner at the appellate level, rather than by the trial court, which actually found that the settlement was a covered Loss. *Level 3,* 272 F.3d at 909. Unlike here, in *Level 3*, the insured decided to settle "after the trial had begun and much of the expense of defending the suit had therefore already been incurred" and it was "seeing the handwriting on the wall." *Id.* at 911-12. Resting on its opinion that the $12 million settlement payment was "not an inconsiderable amount," the court observed that "Level 3 has made no attempt to show that the fraud suit was groundless and the settlement merely an effort to avoid the expense of defending a nuisance suit." *Id.* at 911-12.

The *Level 3* court offered no explanation as to why the policyholder should be required to make such a showing. A defendant may offer to settle a case at higher than "nuisance" value for a variety of reasons, including potential publicity concerns, distraction to its business, and the general risks that are attendant with virtually any lawsuit. Moreover, the "fact finding" made by the *Level 3* appellate court is contrary to the procedural rules adopted in this Circuit. *See La Union Del Pueblo Entero v. FEMA,* 608 F.3d 217, 225 (5th Cir. 2010) (deciding to "avoid improper appellate fact finding"); *Landry v. State of Ala.,* 579 F. 2d 353, 356 (5th Cir. 1978) (declining to "engage in appellate fact finding").

## 2.   Twin City's Non-Texas Cases Do Not Support Its Public Policy Argument

With respect to the other non-binding, out-of jurisdiction cases upon which Twin City relies, a careful review reveals that those cases depend upon a prior determination or admission of wrongdoing or are not even based upon public policy considerations.  Therefore, each of the cases is distinguishable.[14]

Indeed, five of the cases cited involved a prior judicial determination that the insured obtained an unlawful gain:

- *Cent. Dauphin Sch. Dist. v. Am. Cas. Co.*, 426 A.2d 94, 96 (Pa. 1981) (applying Pennsylvania law) – no insurance coverage available for court-ordered restitution where there was a prior judicial determination that the school district policyholder collected an illegal tax.

- *Republic Western Ins. Co. v. Spierer, Woodward, Willens, Denis and Furstman*, 68 F.3d 347, 351-52 (9th Cir. 1995) (applying California law) – coverage unavailable where court entered final judgment ordering insured to return legal fees improperly obtained back to its client.

- *Vigilant Ins. Co. v. Credit Suisse First Boston Corp.*, 782 N.Y.S.2d 19, 20 (1st Dep't 2004) (applying New York law) – no insurance coverage available where prior court order held that insured improperly obtained money and final judgement entered ordering disgorgement of same.

- *Southcentral Employment Corp. v. Birmingham Fire Ins. Co. of Pennsylvania*, 926 A.2d 977, 979 (Pa. Super. Ct. 2007) (applying Pennsylvania law) – coverage unavailable where the Pennsylvania Department of Labor & Industry issued a final determination that the insured unlawfully expended government funds.

- *U.S. Fid. & Guar. Co v. Fendi Adele S.R.L.*, -- F.3d --, 2016 WL 2865578, at *2 (2d Cir. May 17, 2016) (applying New York law) – no insurance coverage

---

[14]   That is, except for the case that actually supports the Oceaneering Defendants, not Twin City's, position.  In *J.P. Morgan Securities Inc. v. Vigilant Ins. Co.*, 992 N.E.2d 1076, 1082 (N.Y. 2013), the court held that the insurer was not entitled to dismissal of the insured's claim for coverage for a $160 million disgorgement payment that it made to the SEC in a settlement.  The court determined that the settlement did not amount to a concession that the "disgorgement payment was predicated on moneys that [the insured] itself improperly earned as a result of its securities violations."  Therefore, the court held that "we are unable to say, as a matter of law, that this public policy exception clearly bars [the insured's] coverage claims."  *Id.* at 1082.

- 17 -

available for prior judicial determinations holding that the insured improperly profited from the sale of counterfeit goods.

Four cases were decided based upon the fact that the claims fell outside the insurance policy's contractual language and, thus, were not solely grounded on public policy concerns:

- *Bank of the West v. Super. Ct.*, 833 P.2d 545 (Cal. 1992) (applying California law) – holding complaint against bank under Unfair Business Practices Act did not seek "damages" for "unfair competition" within the meaning of the CGL policy.

- *Big 5 Corporation v. Gulf Underwriters Ins. Co.*, No. CV 02-3320WJR(SHX), 2003 WL 22127029, *2 (C.D. Cal. July 14, 2003) (applying California law) – finding no coverage under the policy for an action against the insured for unpaid overtime wages because the "the policy specifically excludes indemnification for the wages of former employees in an 'Employment Claim' [and therefore] there is no 'loss.'"

- *Fidelity Bank v. Chartis Specialty Ins. Co.*, No. 1:12-CV-4259-RWS, 2013 WL 4039414, at *4 (N.D. Ga. Aug. 7, 2013) (applying Georgia law) – finding that the insured was not entitled to coverage for an underlying settlement of overdraft fee litigation due to application of exclusion for disputes involving fees and commissions.

- *Mountainside Holdings, LLC v. American Dynasty Surplus Lines Ins. Co.*, No. 2003-127, 2014 WL 3055881 (Pa. Com. Pl. June 30, 2014), *aff'd without decision on any public policy issues*, 2014 WL 10047052 (Pa. Super. Ct. June 25, 2015) (applying Pennsylvania law) – no insurance coverage available for settlement of False Claims Act allegations because losses could not be attributed to insureds and thus did not exceed self-insured retention.

And one case involved an admission by the policyholder that it engaged in wrongdoing:

- *Aon Corp. v. Certain Underwriters at Lloyd's of London*, No. 06-16852, 2010 WL 8510173 (Ill. Civ. Ct. Ch. Div. Dec. 3, 2010) (applying Illinois law) – denying coverage where the insured had attached a statement acknowledging its wrongdoing to its settlement agreement with Attorneys General.

Moreover, none of the cases cited by Twin City apply the important rules of contract interpretation that guide this Court's decision.  In particular, Twin City's out-of-state cases fail to reconcile the Uninsurable Provision with express coverage for shareholder derivative actions and the "final nonappealable" coverage enhancement found in Twin City's Policy.  *See* Def. Br. at

pp. 12-15 (discussing the importance of Texas rules of contract interpretation).  If the rules of contract construction—such as giving effect to all policy provisions—did not influence the decisions of those out-of-state opinions, then they are of little value to this Court.

### E.   *Allegations* **Of Wrongful Conduct Establish Nothing**

Twin City improperly relies on public policy arguments dependent upon an insured's proven or admitted misconduct.  In doing so, Twin City glosses over the absence of any findings or admissions that the Oceaneering Directors actually engaged in any misconduct, hoping this Court will presume liability from the proposed settlement.  *See* Pl. Br. at p. 29 (Twin City argues that the allegations of the Derivative Action "do not support any suggestion that the derivative action is 'groundless'").

Such a presumption would be impermissible, as it is a firmly-established principle of Texas law that settlements do not give rise to an inference of wrongdoing or liability.  *See, e.g.*, *Nat'l Union*, 939 S.W.2d at 141 (allegations against insured must be construed in favor of coverage); *Trosclair v. Chevron U.S.A., Inc.*, 161 F. Supp. 2d 739, 744 (S.D. Tex. 2001) (acknowledging that a settlement did not adjudicate fault); *Hurst v. American Racing Equipment, Inc.*, 981 S.W.2d 458, 462 (Tex. App.—Texarkana 1998, no pet.) (noting that because a claim had already been settled, "there was no judicial finding of liability").[15]  Twin City fails to – and cannot – explain why it should be exempt from this established principle of law.

Twin City also cites *Alaska Elec. Pension Fund v. Brown*, 941 A.2d 1011 (Del. 2007), for the proposition that Oceaneering's "decision to cut [the Non-Employee Directors'] compensation

---

[15]   *See also Virginia Mason Medical Center v. Exec. Risk Indem. Inc.*, No. C07-0636MJP, 2007 WL 3473683, at *5 (W.D. Wash. Nov. 14, 2007), *aff'd*, 331 Fed. App'x 473 (9th Cir. 2009) (noting that courts generally do not permit insurers to "rely on allegations in the [underlying complaint] as objective verification for the illegality of [their insured's] conduct"); *Gallup*, 2015 WL 1201518 at *10 (finding that, where the insurer "merely relies on the allegations set forth in the [underlying] Complaint to establish that the settlement is for restitution…[t]he Court cannot determine that the Settlement is for restitution as a matter of law based upon that assertion alone").

by an average of $400,000 per year is legally presumed to have been caused by and be the effect of the Chancery Action." Pl. Br. at p. 8.  The *Brown* decision does not support a presumption of liability on the part of the Oceaneering Directors.  The court in *Brown* only analyzed a fee-shifting rule, known as the corporate benefit doctrine, which holds that "a litigant who confers a common monetary benefit upon an ascertainable stockholder class is entitled to an award of counsel fees and expenses for its efforts in creating the benefit."  941 A.2d at 1015.  Thus, the purpose of *Brown* and cases following the corporate benefit doctrine are simply to assess the appropriateness of a fee award in derivative or class action suits.  Those cases do not have any relevance to the issues before this Court.

Here, the allegations against the Oceaneering Directors in the Delaware lawsuit remain unproven accusations that are vigorously disputed by all of the insureds.  The Oceaneering Directors continue to defend themselves in the Derivative Action, arguing that the challenged transactions were made under a stockholder-approved plan and that the compensation granted is commensurate with the Oceaneering Directors' wealth of experience and Oceaneering's record earnings over the time period in question.  Exhibit A, Underlying Motion to Dismiss at p. 19, 28.  In fact, over the time period at issue, Oceaneering's stockholders realized a total gain of 119.77%— more than ten times the average return (11.19%) over that same three-year period for Oceaneering's peer companies.  *Id.* at 7.  The Oceaneering Directors have consistently maintained their legal entitlement to their remuneration.  *Id.*

**F.     The Policy Specifically Covers Allegations Of Personal Profit Unless There Is A Final And Nonappealable Adjudication Of Misconduct**

In an attempt to escape their coverage obligations, Twin City pretends that the final adjudication enhancement to the Personal Profit Exclusion does not exist.  This is particularly surprising since Twin City has been aware of the Oceaneering Defendants' coverage position

since at least December 2015.  Pl. Br. at pp. 16-17.  Twin City's only explanation:  because it is not relying on the Personal Profit Exclusion, it is "entirely irrelevant."  *Id*. at 16.  As the Oceaneering Defendants explained in their Opening Brief, this singular focus on only the Uninsurable Provision of the Policy is directly contrary to well-established canons of construction that require the policy to be read as a whole and that effect be given to all of its parts.  *See* Def. Br. at 12; *Balandran v. Safeco Ins. Co. of America*, 972 S.W.2d 738, 741 (Tex. 1998) ("Our primary goal . . . is to give effect to the written expression of the parties' intent . . . We must read all parts of the contract together . . . striving to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative.").

Further, Twin City has misstated the Oceaneering Defendants' argument.  Twin City states that the "Directors claim that in order to prove the settlement of the [Derivative] Action is uninsurable disgorgement, *Twin City must prove* that the Directors did something wrong."  Pl. Br. at p. 25 (emphasis added).  This is not the Oceaneering Defendants' position.  The Oceaneering Defendants are not claiming that Twin City must prove any wrongdoing by the Directors.  To the contrary, Twin City's Policy specifically delineates who may make any such determination.  By the very terms of the Personal Profit Exclusion, only a factfinder in the underlying action can make that determination.  Unlike Twin City, the Oceaneering Defendants do not ask this Court to rewrite the Policy.

## V.    CONCLUSION

This Court should not allow Twin City to use its "Uninsurable Provision" and purported Texas public policy to render meaningless important enhancements to the Oceaneering Defendants' Policy.  Accordingly, the Oceaneering Defendants respectfully request that the Court deny Twin City's Motion in its entirety.

Respectfully submitted,

**REED SMITH LLP**

By:  /s/ J. James Cooper

     J. James Cooper
     T.X. I.D. No. 04780010
     REED SMITH LLP
     811 Main Street
     Suite 1700
     Houston, Texas 77002
     Telephone: 713.469.3800
     Facsimile: 713.469.3899
     jcooper@reedsmith.com

     *Attorney in Charge for Defendants*
     *Oceaneering International, Inc., John R. Huff,*
     *T. Jay Collins, Jerold J. Desroche, D. Michael*
     *Hughes, Harris J. Pappas, Paul B. Murphy,*
     *Jr., David S. Hooker, and M. Kevin McEvoy*

OF COUNSEL:

REED SMITH LLP
Caitlin R. Garber (*pro hac vice* granted)
Pa. I.D. No. 311321
cgarber@reedsmith.com
Kateri Tremblay (*pro hac vice* granted)
Pa. I.D. No. 320466
ktremblay@reedsmith.com