United States District Court
Southern District of Texas
**ENTERED**
February 28, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

TWIN CITY FIRE INSURANCE CO., §
§
    Plaintiff, §
§
v. § CIVIL ACTION NO. H-16-666
§
OCEANEERING INTERNATIONAL, §
INC., et al., §
§
    Defendants. §

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Plaintiff Twin City Fire Insurance Company's Motion for Summary Judgment (Doc. 24) and Defendants' Motion for Judgment on the Pleadings (Doc. 26). The court has considered the motions, the responses, the replies, all other briefs and relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's motion be **GRANTED** and Defendants' motion be **DENIED**.

### I.  Case Background

Plaintiff filed this insurance action against Oceaneering International Inc. ("Oceaneering") and certain of its current and former directors, seeking a declaratory judgment that Plaintiff does not owe Oceaneering indemnity coverage under a directors and officers ("D&O") defense policy issued by Plaintiff with respect to a derivative lawsuit filed against Oceaneering and its directors.

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 10, Ord. Dated Apr. 1, 2016.

## A.    <u>The Insurance Policy</u>

Oceaneering purchased the D&O Premier Defense Policy (the "Policy") from Plaintiff to cover the period August 1, 2013, to August 1, 2014.[2]  Oceaneering was the insured entity under the Policy, but the Policy also covered, among others, directors and officers as insured persons.[3]  The limit of liability on the Policy was $10,000,000 subject to a self-insured retention that varied according to which of four insuring agreements covered the claim.[4]  Although the Policy did not obligate Plaintiff to defend any insured, it did obligate Plaintiff to reimburse defense costs, which then applied to reduce the available limit of liability.[5]

The first two listed insuring agreements provided (as amended by endorsement):

**(A)   NON-INDEMNIFIABLE DIRECTORS' AND OFFICERS' LIABILITY**

**(1)**   Except for **Loss** which the Insurer pays pursuant to Insuring Agreement (B) of this Policy, the Insurer will pay **Loss** on behalf of the **Insured Persons** which the **Insured Persons** have become legally obligated to pay as a result of a **Claim** first made during the **Policy Period** . . . against the **Insured Persons** for a **Wrongful Act** which takes place during or prior to the **Policy Period.**

---

[2]    <u>See</u> Doc. 24-2, Ex. A-1 to Pl.'s Mot. for Summ. J., The Hartford D&O Premier Defense Policy p. 8.  For this exhibit, the court cites to the docket page number rather than the internal document page number.

[3]    <u>See</u> <u>id.</u> pp. 8, 16, 36.

[4]    <u>See</u> <u>id.</u> p. 8.

[5]    <u>See</u> <u>id.</u>

. . . .

**(B)   INDEMNIFIABLE DIRECTORS' AND OFFICERS' LIABILITY**

**(1)**   The Insurer will pay **Loss** on behalf of the **Entity** for which the **Entity** has, to the extent permitted or required, indemnified the **Insured Persons**, and which the **Insured Persons** have become legally obligated to pay as a result of a **Claim** first made during the **Policy Period** . . . against the **Insured Persons** for a **Wrongful Act** which takes place during or prior to the **Policy Period**.[6]

The Policy defined "loss" to mean damages, defense costs, and investigation costs and defined "damages" in relevant part, as amended by endorsement, to mean "amounts, other than **Defense Costs**, **Pre-Claim Inquiry Costs** or **Release Costs**, which the **Insured Persons** . . . are legally obligated to pay as a result of any **Claim** insured by this Policy, including . . . settlements, judgments, and costs, awarded pursuant to judgments, and appeals."[7]   The Policy stated that damages "shall not include . . . amounts for matters uninsurable pursuant to applicable law."[8]

Under the section for exclusions, the Policy stated (as amended by endorsement) that Plaintiff would not pay damages:

of an **Insured**, based upon, arising from, or in any way related to the gaining of any personal profit, remuneration or financial advantage to which such **Insured** is not legally entitled if any final and nonappealable adjudication other than an action or proceeding initiated

---

[6]   Id. pp. 36-37.

[7]   Id. p. 37.

[8]   Id.

3

by the Insurer to determine coverage under the policy, establishes such gain . . . .[9]

## B.  The Underlying Lawsuit (the "Derivative Action")

On June 17, 2014, Peter L. Jacobs ("Jacobs"), an Oceaneering[10] shareholder, filed the Derivative Action in Delaware Chancery Court on behalf of Oceaneering against its current directors and one former director.[11]  The crux of the Derivative Action was that the members of Oceaneering's board, over the prior four years, had "granted themselves total compensation in amounts that are grossly excessive when compared to what typical directors in similar positions have been paid for their services."[12]  The complaint also alleged that one of the non-employee directors was awarded additional unfair compensation over a two-year period.  Jacobs asserted that Oceaneering and its stockholders had been harmed by these payments.[13]

The complaint alleged breach of fiduciary duty against all of

---

[9]      Id. pp. 19 , 43.

[10]     "Oceaneering, a Delaware corporation with its principal place of business at 11911 Farm to Market Road 529 Houston, TX 77041, is an engineering company which primarily provides services to the oil and gas industry."  Doc. 24-2, Ex. A-3 to Pl.'s Mot. for Summ. J., Verified Stockholder Derivative Compl. in Jacobs v. Huff, Case No. 9774-VCP, (Del. Ch. June 17, 2014) p. 5.

[11]     See id. p. 1.

[12]     See id. p. 2.  All eight of the individuals who are defendants in the Derivative Action are also named as defendants in the action pending here.  See Doc. 1, Orig. Compl. for Decl. Relief.

[13]     Doc. 24-2, Ex. A-3 to Pl.'s Mot. for Summ. J., Verified Stockholder Derivative Compl. in Jacobs v. Huff, Case No. 9774-VCP, (Del. Ch. June 17, 2014) p. 4.

the named board members and unjust enrichment against all of the named board members except Oceaneering's president/chief executive officer.[14]   With regard to the unjust-enrichment claim, Jacobs requested that the court order the seven non-employee directors "to disgorge the proceeds obtained as a result of the excessive and unfair transactions" described in the complaint.[15]  Under the prayer for relief, Jacobs repeated the request for disgorgement and sought damages for the alleged breaches of fiduciary duties.[16]

On June 17, 2014, Oceaneering tendered the Derivative Action to Plaintiff as a claim for coverage.[17]  On June 23, 2014, Plaintiff confirmed receipt of the claim, expressly reserving all right available under the Policy.[18]  On October 6, 2014, Plaintiff sent Oceaneering a letter that provided a preliminary coverage analysis, a consent to the retention of counsel with guidelines as to how defense costs were to be handled, an advisement that no settlement could be made without Plaintiff's consent, and a full reservation of rights.[19]

---

[14]     See id. pp. 28-29.

[15]     Id. p. 29.

[16]     See id. pp. 29-30.

[17]     See Doc. 24-2, Ex. A-2 to Pl.'s Mot. for Summ. J., Email from Lee Snelgrove to HFP Claims Dated June 17, 2014.

[18]     See Doc. 24-2, Ex. A-4 to Pl.'s Mot. for Summ. J., Email from Jennifer Jacobson to David Leung Dated June 23, 2014.

[19]     See Doc. 24-2, Ex. A-5 to Pl.'s Mot. for Summ. J., Letter from Jennifer Jacobson to David Leung Dated Oct. 6, 2014.

On September 25, 2015, Jacob's attorney sent a settlement demand email to counsel for the Derivative Action defendants that set out the calculation of damages sought in the Derivative Action.[20]   The calculation of damages indicated that the vast majority of the demand was attributable to disgorgement of the alleged excess compensation.[21]   On October 8, 2015, Oceaneering's insurance broker sent Plaintiff a summary of Jacob's settlement demand along with a counterproposal timeline.[22]   On January 29, 2016, the defendants in the Derivative Action responded with a counterproposal.[23]   As of April 2016, the settlement negotiations continued.[24]

While settlement negotiations were ongoing, Plaintiff and Oceaneering's insurance broker exchanged correspondence concerning their respective positions on coverage.[25]   Among other disputes,

---

[20]   See Doc. 28-1, Sealed Ex. B-1 to Pl.'s Mot. for Summ. J., Email from Douglas E. Julie to David Sterling Dated Sept. 25, 2015.

[21]   See id.

[22]   See Doc. 28-1, Sealed Ex. B-2 to Pl.'s Mot. for Summ. J., Email from Lindsey Roser to Jennifer Jacobson, et al., Dated Oct. 8, 2015.

[23]   See Doc. 28-1, Sealed Ex. B-3 to Pl.'s Mot. for Summ. J., Letter from David Sterling to Douglas E. Julie Dated Jan. 29, 2016.

[24]   See Doc. 28-1, Sealed Ex. B-10 to Pl.'s Mot. for Summ. J., Email Chain Between David Sterling & Nicholas Porritt Dated Apr. 1, 2016 & Apr. 11, 2016.

[25]   See Doc. 28-1, Sealed Ex. B-4 to Pl.'s Mot. for Summ. J., Email from Jennifer Jacobson to Lindsey Roser Dated Nov. 10, 2015; Doc. 28-1, Sealed Ex. B-5 to Pl.'s Mot. for Summ. J., Email from Lindsey Roser to Jennifer Jacobson Dated Dec. 2, 2015; Doc. 28-1, Sealed Ex. B-6 to Pl.'s Mot. for Summ. J., Email from Jennifer Jacobson to Lindsey Roser Dated Dec. 31, 2015; Doc. 28-1, Sealed Ex. B-7 to Pl.'s Mot. for Summ. J., Email from Lindsey Roser to Jennifer Jacobson Dated Jan. 14, 2016; Doc. 28-1, Sealed Ex. B-8 to Pl.'s Mot. for Summ. J., Email from

Plaintiff consistently took the position that "damages" as defined by the Policy did not include uninsurable amounts, and Oceaneering consistently argued that the personal-profit exclusion meant that settlements were covered.[26]

**C.  The History of this Lawsuit**

Plaintiff filed this action on March 14, 2016, against Defendants Oceaneering and six of its current and two of its former directors.[27] Plaintiff requested that the court enter declarations stating that: (1) disgorgement and/or restitution damages are uninsurable as a matter of law and are not covered by the Policy; (2) even if they are not uninsurable, disgorgement and/or restitution are not covered under the terms of the Policy; (3) the Derivative Action plaintiff requested disgorgement or restitution from the individual defendants; (4) any settlement of the Derivative Action by the individual defendants involves disgorgement and/or restitution; and (5) Plaintiff has no duty under the Policy and/or applicable law to indemnify Oceaneering and/or the individual defendants for any settlement of the Derivative Action.[28]

---

Jennifer Jacobson to Lindsey Roser Dated Jan. 28, 2016; Doc. 28-1, Sealed Ex. B-9 to Pl.'s Mot. for Summ. J., Email from Jennifer Jacobson to Lindsey Roser Dated Feb. 1, 2016.

[26]     See id.

[27]     See Doc. 1, Orig. Compl. for Decl. Relief pp. 1, 3-5.

[28]     Id. p. 13.

7

On April 7, 2016, Defendants answered, asserted multiple defenses, and counterclaimed for declaratory relief.[29] Specifically, Defendants sought declarations that: (1) the Derivative Action involves an insurable loss under the Policy to which no exclusion applies; and (2) Defendants are entitled to coverage, up to the full amount of the Policy's limit of liability, for any settlement in the Derivative Action.[30]   On May 4, 2016, Plaintiff filed an answer to Defendants' Counterclaim.[31]

On June 8, 2016, Plaintiff and Defendants filed their respective dispositive motions.[32]   The last-filed brief on the motions was filed on December 5, 2016.[33]   The court now addresses the pending motions.

## D.  <u>Court's Approach to Pending Motions</u>

The parties agreed to file cross-motions on the issue of "[w]hether a settlement in the [Derivative Action] of a claim seeking disgorgement is recoverable under the Twin City policy (and not prohibited under Texas public policy)."[34]   Plaintiff supported

---

[29]   <u>See</u> Doc. 16, Defs.' Ans., Defenses, & Countercl. for Declaratory Relief.

[30]   <u>Id.</u> p. 22.

[31]   <u>See</u> Doc. 20, Pl.'s Ans. to Defs.' Countercl.

[32]   <u>See</u> Doc. 24, Pl.'s Mot. for Summ. J.; Doc. 26, Defs.' Mot. for J. on the Pleadings.

[33]   <u>See</u> Doc. 38, Defs.' Reply in Support of Their Notice of Suppl. Auth.

[34]   <u>See</u> Doc. 19, Jt. Disc./Case Mgmt. Plan Under Fed. Rule Civ. Proc. 26(f) pp. 3-4.

its summary judgment motion with evidence, including the Policy, documents related to the filing and adjusting of the insurance claim, documents related to settlement discussions in the Derivative Action, and Defendant Oceaneering's April 2015 and April 2016 Schedule 14A Proxy Statements.[35] Defendants submitted only an appendix of unreported cases with their motion and, in connection with their response to Plaintiff's motion for summary judgment, submitted only a motion brief filed in the Derivative Action and an appendix of unreported cases.[36] In the briefing that followed on both pending motions, neither party filed any previously unsubmitted evidence.[37]

The court finds no reason to consider cross-motions on the same issue under separate review standards. Moreover, the parties submitted matters outside the pleadings for consideration and have engaged in sufficient briefing to allow ample opportunity for presenting all the outside material that they find pertinent to resolution of the motions. Therefore, the court treats Defendants'

---

[35]    See Doc. 24-2, Ex. A to Pl.'s Mot. for Summ. J., Principal Decl. of Anthony Fowler ("Fowler") & Attached Exs., Ex. B to Pl.'s Mot. for Summ. J., Sealed Suppl. Decl. of Fowler & Attached Exs., Ex. C to Pl.'s Mot. for Summ. J., Decl. of James Sandnes & Attached Exs.

[36]    See Doc. 26-2 through Doc. 26-5, App'x to Defs.' Mot. for J. on the Pleadings; Doc. 30-1, Ex. A to Defs.' Resp. in Opp. to Pl.'s Mot. for Summ. J., Brief in Support of Defs.' Mot. to Dismiss Pl.'s Stockholder Derivative Compl. in Jacobs v. Huff, Case No. 9774-VCP, (Del. Ch. Sept. 5, 2014); Doc. 30-2, App'x to Defs.' Resp. in Opp. to Pl.'s Mot. for Summ. J.

[37]    See Doc. 31, Reply in Support of Defs.' Mot. for J. on the Pleadings; Doc. 32, Pl.'s Reply Brief in Support of its Mot. for Summ. J.; Doc. 34, Notice of Suppl. Auth. in Support of Defs.' Mot. for J. on the Pleadings; Doc. 35-1, Pl.'s Resp. to Defs.' Notice of Suppl. Auth.; Doc. 38, Reply in Support of Defs.' Notice of Suppl. Auth.

motion for judgment on the pleadings as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d).

## II.   Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists on any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

Cross-motions for summary judgment are considered separately under this rubric.  See Shaw Constructors v. ICF Kaiser Eng'rs, 395 F.3d 533, 538-39 (5th Cir. 2004).  Each movant must establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law, and the court views the evidence in favor of each nonmovant.  See id.; Tidewater Inc. v. United States, 565 F.3d 299, 302 (5th Cir. 2009)(quoting Ford Motor Co. v. Tex. Dep't of Transp., 264 F.3d 493, 499 (5th Cir. 2001)).

### III. Analysis

The parties to this case disagree on a number of issues. The court takes its own course through the analysis, addressing only the arguments necessary to resolve the pending motions.

#### A.  <u>Insurance Law</u>

Under Texas law,[38] the insured generally bears the initial burden of establishing that coverage is potentially provided by the applicable insurance policy, while it is the insurer's burden to prove the applicability of an exclusion permitting it to deny coverage.  See <u>SWE Homes, LP v. Wellington Ins. Co.</u>, 436 S.W.3d 86, 90 (Tex. App.—Houston [14th Dist.] 2014, no pet.).  If the insurer is successful, the burden shifts back to the insured to prove that an exception to the exclusion applies.  <u>Guar. Nat'l Ins. Co. v. Vic Mfg. Co.</u>, 143 F.3d 192, 193 (5th Cir. 1998).

An exclusion cannot grant coverage that does not otherwise exist under a policy.  <u>United Nat'l Ins. Co. v. Hydro Tank, Inc.</u>, 497 F.3d 445, 451-52 (5th Cir. 2007)(<u>amended in part on other grounds</u> in <u>United Nat'l Ins. Co. v. Hydro Tank, Inc.</u>, 525 F.3d 400 (5th Cir. 2008))(applying Texas law).  Likewise, an exception to an

---

[38]     Texas law applies to this insurance dispute.  <u>See</u> Doc. 1, Pl.'s Orig. Compl. for Declaratory Relief p. 7 (stating that the policy was delivered to Oceaneering in Texas and that Texas law applies); Doc. 16, Defs.' Ans., Defenses, & Countercl. for Declaratory Relief p. 5 (admitting that Plaintiff issued and delivered the Policy in Texas).  Pursuant to the Texas Insurance Code, "[a]ny contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby . . . ."  Tex. Ins. Code art. 21.42.

exclusion does not have "the affirmative status of being covered by the policy." Columbia Cas. Co. v. Ga. & Fla. RailNet, Inc., 542 F.3d 106, 112 (5th Cir. 2008)(applying Texas law).

Insurance policies are subject to the rules of contract interpretation. State Farm Lloyds v. Page, 315 S.W.3d 525, 527 (Tex. 2010). In construing the terms of a written contract, the court's primary goal is always "to determine the contracting parties' intent through the policy's written language." Id. To this end, the court reads all parts of the contract as a whole and gives effect to each word, clause, and sentence so that no part of the agreement is rendered inoperative. Id. Courts construe terms in contracts to have their plain, ordinary meaning unless something in the contract itself indicates that the parties intended for them to have particular definitions. Tanner v. Nationwide Mut. Fire Ins. Co., 289 S.W.3d 828, 831 (Tex. 2009).

In Texas, an insurer's duty to defend and its duty to indemnify are two distinct and separate duties. McGinnes Indus. Maint. Corp. v. Phoenix Ins. Co., 477 S.W.3d 786, 803 (Tex. 2016). Under Texas law, an insurer's duty to indemnify is narrower than its duty to defend. Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr., 468 F.3d 857, 858 (5th Cir. 2006)(applying Texas law). The duty to indemnify is triggered by the actual facts establishing the insured's liability in the underlying litigation. Hartford Cas. Ins. Co. v. DP Eng'g, L.L.C., 827 F.3d 423, 430 (5th Cir.

2016)(applying Texas law).

B. **Discussion**

The parties are entrenched in their respective positions on coverage of settlement amounts that constitute disgorgement and have asked the court to resolve the matter on competing claims for declaratory relief.[39]   The court finds that the answer lies in the principles of contract interpretation and the process of case exegesis.

Insuring agreement (A) offered coverage for losses to the directors that were not indemnifiable by Oceaneering, and insuring agreement (B) offered coverage for losses to the directors that were indemnifiable.   As applied to the Derivative Action, Oceaneering is not permitted to indemnify the directors for damages owed to Oceaneering itself, as in this case where the underlying plaintiff is seeking the return of excessive compensation paid by Oceaneering to the directors.   However, Oceaneering is permitted and has agreed to indemnify the directors for defense costs.[40]   Thus, to the extent there is coverage, the disgorgement of excessive compensation falls under insuring agreement (A) and defense costs fall under insuring agreement (B).   Plaintiff does not dispute its obligation to pay defense costs under insuring

---

[39]     This is the only aspect of coverage that is in dispute.

[40]     See Doc. 1, Orig. Compl. for Decl. Relief p. 8; Doc. 16, Defs.' Ans., Defenses, & Countercl. for Declaratory Relief p. 5.

agreement (B) subject to the applicable self-insured retention.[41]
Thus, the court's focus is on whether the disgorgement of
compensation is a covered loss under insuring agreement (A).[42]

As stated above, the Policy defined "loss" to include damages.
"Damages," in turn was defined as amounts that the insureds are
legally obligated to pay pursuant to a covered claim including
settlement amounts but not "amounts for matters uninsurable
pursuant to applicable law."[43]  This language is not ambiguous and
can be enforced as written.  See In re TransTexas Gas Corp., 597
F.3d 298, 309 (5th Cir. 2010)(finding language stating that "loss"
shall not include "matters which may be deemed uninsurable under
the law pursuant to which this policy shall be construed" to be
unambigous).  The question is whether the disgorgement of excessive
compensation is uninsurable as a matter of Texas law and therefore
not a covered loss.

The Fifth Circuit answered a similar question under Texas law
in In re TransTexas Gas Corp., 597 F.3d at 298, which provides
binding authority for this court's analysis.  That case addressed
a bankruptcy judgment against the company's prior chief executive

---

[41]    See Doc. 24-1, Mem. in Support of Pl.'s Mot. for Summ. J. p. 18.

[42]    Plaintiff also does not dispute its obligation to pay other damages
not in the nature of disgorgement.  See id. p. 18 (stating that Plaintiff "has
never taken the position that no part of a settlement could ever be covered" but
contending that only disgorgement is presently in dispute and ripe for the
court's consideration).

[43]    Doc. 24-2, Ex. A-1 to Pl.'s Mot. for Summ. J., The Hartford D&O
Premier Defense Policy p. 37.

14

officer to whom the company paid a severance package after his resignation. Id. at 302-03. The parties had entered into an employment agreement that allowed severance payments if the officer was terminated—$3,000,000 if terminated without cause and $1,500,000 if terminated for cause—but no severance if he voluntarily resigned. Id. at 302. Nevertheless, when the officer resigned, the company's board decided to invoke the severance provision of the contract and paid the officer $2,270,794.90. Id. In bankruptcy court, the severance payments were held to be fraudulent transfers, and the officer was ordered to repay the severance money he had received, plus attorneys' fees and costs. Id. at 303.

The insurance company that issued a D&O liability policy filed a declaratory judgment action regarding insurance coverage for the disgorgement of the officer's severance compensation. See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. U.S. Bank, Nat'l Assoc., Civil Action No. 4:07-CV-1958, 2008 WL 2405975, at *1 (S.D. Tex. June 11, 2008)(applying Texas law)(unpublished). The coverage issue was the same as here, whether amounts in the nature of restitution/disgorgement were damages covered under the policy. See id. at *4. The definition of loss in the policy under consideration explicitly did not include "matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed." Id. at *2.

The district court decided the issue on summary judgment, holding that the insureds did not carry their burden of establishing coverage under the policy.  See id. at *5.  In reaching this conclusion, the district court relied on Nortex Oil & Gas Corp. v. Harbor Insurance Co., 456 S.W.2d 489 (Tex. Civ. App.—Dallas 1970, no writ), and Level 3 Communications, Inc. v. Federal Insurance Co., 272 F.3d 908 (7th Cir. 2001).  See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 2008 WL 2405975, at **4-5.

In Nortex Oil & Gas Corp., the state court addressed a similar coverage issue after the insured had settled a claim that alleged the insured had "converted property by wrongfully appropriating and selling oil" that belonged to others.  Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 2008 WL 2405975, at *4.  Quoting Nortex Oil & Gas Corp., the district court wrote:

> An insured . . . does not sustain a covered loss by restoring to its rightful owners that which the insured, having no right thereto, has inadvertently acquired . . . . The insurer did not contract to indemnify the insured for disgorging that to which it was not entitled in the first place, or for being deprived of profits to which it was not entitled.

Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 2008 WL 2405975, at *4 (quoting Nortex Oil & Gas Corp., 456 S.W.2d at 494).

In Level 3 Communications, Inc., the Seventh Circuit also addressed a similar coverage issue after the insured had settled a claim that alleged securities fraud.  Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 2008 WL 2405975, at *4.  Quoting Level 3

<u>Communications, Inc.</u>, the district court wrote, "The interpretative principle for Federal [Insurance Company] contends—that a 'loss' within the meaning of an insurance contract does not include the restoration of an ill-gotten gain—is clearly right." <u>Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.</u>, 2008 WL 2405975, at *5 (quoting <u>Level 3 Comm'ns, Inc.</u>, 272 F.3d at 910).

The district court's decision was considered by the Fifth Circuit on appeal.  <u>See</u> <u>In re TransTexas Gas Corp.</u>, 597 F.3d at 303.  As did the district court, the Fifth Circuit relied on <u>Nortex Oil & Gas Corp.</u> and <u>Level 3 Communications, Inc.</u>, explicitly agreeing with the interpretation of loss within the meaning of an insurance contract as not including amounts that are restitutionary in character.  <u>See</u> <u>In re TransTexas Gas Corp.</u>, 597 F.3d at 310.

As <u>In re TransTexas Gas Corp.</u> and the cases it discussed are on point, the court relies on its application of Texas insurance law and its interpretation of very similar policy coverage provisions.  The case before this court involves the potential settlement of a lawsuit alleging, in part, unjust enrichment against the directors based on excessive and unfair compensation. Any settlement amounts directed at repayment of the excessive compensation is, as the Fifth Circuit found the settlement amount in <u>In re TranTexas Gas Corp.</u>, a "disgorgement of ill-gotten gains and a restitutionary payment." <u>Id.</u>  Thus, the court finds that those amounts do not constitute a covered loss under the Policy.

Defendants in this case failed to carry their burden of showing that disgorgement of the directors' excessive compensation is covered by the Policy.[44]

Defendants assert that <u>Burks v. XL Specialty Insurance Co.</u>, NO. 14-14-00740-CV, 2015 WL 6949610, at *1 (Tex. App.—Houston [14[th] Dist.] Nov. 10, 2015, no pet.)(unpublished), a Texas intermediate appellate court decision, requires a different result.   In <u>Burks</u>, the court was tasked with deciding, among other issues, whether the claim of a chief financial officer, who settled an action seeking disgorgement and other damages, was covered by a D&O policy.  <u>See</u> <u>id.</u> at **1, 8.

The court found that, because the officer had settled the claim, "there [was] necessarily a fact issue about whether the entire settlement amount represented disgorgement of ill-gotten gains."  <u>Id.</u> at *8.  The court offered a different interpretation of <u>Nortex Oil & Gas Corp.</u> from that provided <u>In re TransTexas Gas Corp.</u>, disagreeing, to the extent that the Fifth Circuit interpreted <u>Nortex Oil & Gas Corp.</u> "as establishing a public policy in Texas against insuring settlements made in satisfaction of claims alleging ill-gotten gains."  <u>See</u> <u>Burks</u>, 2015 WL 6949610, at

---

[44]    The district court and the Fifth Circuit placed the burden on the insureds to establish whether the claim in that case fell within the meaning of "loss" under the insurance policy.  <u>See</u> <u>In re TransTexas Gas Corp.</u>, 597 F.3d at 311; <u>Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.</u>, 2008 WL 2405975, at *5. The court follows that lead in not reading the language of the damages definition in the Policy as an exclusion.  However, even if the court were to place the burden on Plaintiff, the court would find that the burden was met.

*9.  The court found that no Texas court had "held that insuring a settlement of a claim seeking restitution or disgorgement is against public policy or otherwise generally 'uninsurable under the law' of Texas; nor has the Legislature enacted any legislation on point." Id.  The court refused to find as a matter of law that the parties intended to exclude coverage for a settlement such as they had entered in that case.  Id.  Even so, the court found a genuine issue of material fact as to whether the settlement was for disgorgement and reversed the lower court's grant of summary judgment and remanded for proceedings consistent with its opinion. See id. at *10.

Weeks later, the parties filed a joint motion to dismiss the appeal as moot because the underlying case had settled.  See Burks v. XL Specialty Ins. Co., NO. 14-14-00740-CV, 2016 WL 191988, at *1 (Tex. App.—Houston [14th Dist.] Jan. 12, 2016)(unpublished).  The court granted the motion to dismiss and vacated its judgment but did not withdraw its opinion.  See id.  Facing a choice between an unpublished opinion of a Texas intermediate court of appeals in which the judgment was subsequently vacated and a published decision in which the Fifth Circuit interpreted Texas law, this court is bound by the Fifth Circuit's prediction as to the opinion of the Supreme Court of Texas.  The court need not and does not look beyond the applicable, binding, and undisturbed decision in In re TransTexas Gas Corp. to discuss the many other cases cited by

19

the parties that were decided in other jurisdictions.[45]

Having decided that Defendants' claim is not covered by the Policy, the court need not interpret the Policy any further. However, the court briefly addresses Defendants' assertion that the personal-profit exclusion is an enhancement to coverage. The personal-profit exclusion excluded coverage for damages that were "based upon, arising from, or in any way related to the gaining of any personal profit, remuneration or financial advantage" if a final, nonappealable adjudication established such gain.[46]

As noted above, neither an exclusion nor an exception can create coverage. See Columbia Cas. Co., 542 F.3d at 112; United Nat'l Ins. Co., 497 F.3d at 451-52. In this case, the court does not reach any exclusion because Defendants failed to establish that their claim falls within the coverage provisions in the first instance. See In re TransTexas Gas Corp., 597 F.3d at 311 n.5 ("In light of our holding, we need not address the district court's alternative [finding] that[,] even if the bankruptcy judgment did constitute a 'loss,' it would fall within the Policy's 'profit or advantage' exclusion.").

That said, the exclusion only applies to "damages," which is

---

[45]     Additionally, because the court finds that the Policy and applicable law relieve Plaintiff of the obligation to pay settlement damages that are in the nature of disgorgement, the court need not and should not resort to making a ruling based on public policy.

[46]     Doc. 24-2, Ex. A-1 to Pl.'s Mot. for Summ. J., The Hartford D&O Premier Defense Policy pp. 19 , 43.

defined by the Policy not to include matters that are otherwise uninsurable.  If otherwise covered and within the definition of damages, the gaining of personal profit, remuneration, or financial advantage was to be excluded if the gain was established by a final adjudication.  The court does not find this interpretation to render the exclusion meaningless because the provisions are not coextensive.  The fact that the claim at issue here might be subject to the exclusion if it were covered does not mean the exclusion is meaningless.  Conceivably, amounts related to the gaining of personal profit, remuneration, or financial advantage could be insurable under applicable law; in which case, they would fit within the coverage provisions and would be excluded only upon a final adjudication of such gain.

Although the court has determined that any settlement amount that is in the nature of disgorgement is not covered by the Policy, the court cannot determine at this point what percentage of the settlement that is.  As is evident from the plaintiff's original settlement demand in the Derivative Action, a significant portion of the amount sought is derived from calculations of the alleged overpayment to the directors and, thus, in the nature of disgorgement.  However, the Derivative Action seeks other damages that may be covered by the Policy.  The Policy addressed the scenario of a settlement that included damages and amounts that do not constitute damages, stating that the insureds and Plaintiff

21

"agree[d] to use their best efforts to fairly and reasonably allocate the amount of such settlement or judgment on the basis of relative legal and financial exposures to the covered **Damages** and the non-covered amounts."[47]   Allocation is not an issue in this declaratory action and is necessarily left for another day.

The court finds that a settlement in the Derivative Action, to the extent that any portion of it constitutes disgorgement, is uninsurable as a matter of Texas law and is not covered by the Policy.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's motion is **GRANTED** and Defendants' motion is **DENIED**.   The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.   Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.   Copies of such objections shall be mailed to opposing parties and to the chambers

---

[47]   Doc. 24-2, Ex. A-1 to Pl.'s Mot. for Summ. J., The Hartford D&O Premier Defense Policy p. 8.

of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

    **SIGNED** in Houston, Texas, this 28th day of February, 2017.

_____
U.S. MAGISTRATE JUDGE